Thomson, J.,
delivered the opinion of the court.
In November and December, 1890, Archie O. Fisk was the proprietor of the Oasis Hotel, in Greeley, Colorado. From November 10th to December 10th, the hotel was in charge of Mrs. Shear as the agent of Fisk. Under an agreement between Mrs. Shear, purporting to act as Fisk’s agent, and the Greeley Electric Light Company, the company replaced the electric light wires in the hotel, and the other apparatus, material and fixtures necessary for the lighting of the hotel by electricity. The work was commenced about the 20th of November, and completed about the 20th of December. Fisk refused to pay the company for the work and material, and it brought this suit against him, resulting in a judgment in its favor for $510. From this judgment, defendant appeals to this court.
The errors assigned relate exclusively to the giving and refusing of instructions. At the request of plaintiff, the court instructed the jury as follows:
“ 1. If you believe from the evidence that the defendant in this case authorized the work to be done, either personally or through an agent, then the defendant is liable for the value of the work done.
“ 2. If you do not believe that the defendant authorized *321 the work, but you still believe that at any time during the progress of the work he was present, and saw the work going on, and made no objection to the continuance of the work, and no protest against its being done, you are instructed that that was a ratification of the original contract, if any was made, and that the defendant is liable for the value of the work done.”
“ 3. You are further instructed that if the defendant did not authorize the work, or if he was not present when the work was being done, yet if, after the work was completed, he signed a note covering the alleged value of the work done, knowing that the note was for that purpose, that that was a ratification, and the defendant is liable.”
“ 4. You are further instructed that if the defendant gave his agent authority to have the building wired, that he is now liable for the reasonable value of the work actually done.”
The instructions are not numbered in the record. The numbering is ours for our own convenience in considering them.
The first instruction states a proposition, which in the abstract is perhaps correct, but in view of the evidence in the case it is misleading, and very probably had that effect upon the jury. The entire evidence is, that the defendant did not contract for the work personally. There is no claim or pretense that he did; but it was conceded at the trial that he had an agent, and that that agent was Mrs. Shear. He so testified himself, as did also Mrs. Shear; and it was under an agreement with Mrs. Shear, that the defendant did the work. How, under that instruction, worded as it is, the jury might well conclude that it was their duty to find their.verdict for the plaintiff, and that it was unnecessary to consider any of the other evidence in the case. Mrs. Shear was the defendant’s admitted agent; it was through her that the work was authorized, and in the absence of any instruction from the court upon the subject, the question of the extent, of her authority and of her power to bind the defendant in the matter of this contract, — questions which are vital to a just *322 determination of the cause, — did not probably receive any consideration at their hands.
Mrs. Shear was the agent of defendant to manage the Oasis Hotel, according to her statement, or, as defendant puts it in his testimony, she was employed to run the hotel, which means the same thing. Within the scope of her employment her agency was general; she had the right to purchase the necessary supplies; to buy suitable and appropriate goods for use in the hotel; to collect and receive the moneys due from guests, and to do all such things as are usual or necessary in the conduct of the business with which she was entrusted. Banner Tobacco Co. v. Jennison, 48 Mich. 459; Schmidt v. Sandel, 30 La. Ann. 353; Beacher v. Venn, 35 Mich. 466; Cummings v. Sergeant, 9 Met. (Mass.) 172.
Her authority as agent was confined to the business of the hotel, and by any of her transactions in matters properly pertaining to that business, her principal was unquestionably bound. But beyond those limits, as mere manager of the hotel, she was not the defendant’s agent at all. To incur any responsibility for him outside of the management of the hotel business proper, she must have special authority from him for that particular purpose. She could not tear down the walls of the building and erect others in their place; she could not cover the hpuse with a new roof; she could not remove the furniture and fixtures, and involve him in debitor other articles of like character to be used in their stead; she could not do any act which might operate to create a lien upon the real estate. None of these things would be carrying on the business of a hotel. The removal of the old electric wiring apparatus and fixtures and replacing them with new, were not within the authority which she possessed as manager.
It might be gathered from the testimony of Mrs. Shear that, independently of her agency as manager, she had a special authority to contract for this work. In so far as her statement tended in this direction she was positively and unequivocally contradicted by the defendant; and the question *323 as to whether she was so specially authorized, ought to have been submitted to the jury by an instruction properly framed for that purpose. The instruction given is couched in such general and indefinite terms, that a jury might very easily infer that under the agency, which was not controverted, the authority existed to cause the work to be done, and the vice is not cured by any other instruction given.
Neither the second nor the third instruction is based upon any evidence in the case ; no witness swears that the defendant at any time during the progress of the" work was present and saw it going on. Indeed, from the testimony of plaintiff’s witnesses alone, it is extremely improbable that such was the case; while defendant denies with great emphasis that he ever saw it, or knew anything whatever about it, until long after it was completed. Neither is there any evidence that he ever signed a note covering the alleged value of the work done, knowing that the note was for that purpose. The only testimony as to the execution of the note is that of the defendant himself. Sometime near the last of November, 1890, he being about to go out of the city, signed a note in blank, for the purpose of renewing a note he owed at the bank, and left it with his clerks. He was away a portion of December and part of January, and was sick and incapacitated from doing business during February. The note signed in blank was not used in renewal because the bank note was paid. A note for the amount of its claim dated February 1, 1891, had been sent to the plaintiff but was not satisfactory, the plaintiff claiming that it should have borne date January 1st, and drawn 12 per cent instead of 8 per cent interest. It was returned to defendant, and neither it nor another in its place was ever sent back to the plaintiff. Defendant says that the notification given to him of the return of this note was the first intimation he had of the doing of the work in question; that he never signed any note on account of the work, and that he knew that the note which was returned to him was the blank note which he had signed, because it was the only note he had signed in blank. He not only did not *324 sign the note for the purpose of paying for this work, but until the note which he had signed in blank, for an entirely different purpose,’ came back to him filled up, he was ignorant that any such work had been done.
The instructions should in all cases be based upon the evidence, and an instruction, no matter how correct the principle which it may announce, that impliedly assumes the existence of evidence which was not given, is erroneous. It is calculated to bewilder and mislead the jury by producing the impression that in the mind of the court, some such state of facts as the instruction supposes, may be inferred from the evidence given, or concealed within it. The authorities upon this proposition are numerous and uniform. Breeze v. State, 12 Ohio, N. S. 146; Ely v. Tallman, 14 Wis. 28; Hill v. Canfield, 56 Pa. St. 454; Atkins v. Nicholson, 31 Mo. 488; Bensley v. Brockway, 27 Ill. App. 410.
The fourth instruction is as objectionable as the first. An agency and an authority are referred to in general terms, but it leaves the jury to infer what agency and what authority, are meant. It affords them no aid in distinguishing between the general agency which was acknowledged, and the power of the agent under it, and a special agency which would have warranted the contract.
As the judgment of the court below must be reversed for the reasons given, it will be, unnecessary to notice the instructions asked by defendant, and refused by the court.

jReversed.