# JANUARY TERM

[No. 7910]

## COLORADO SPRINGS AND INTERURBAN RAILWAY COMPANY v. ENGLE.

1. STREET RAILWAY COMPANY. *Care Required in Operation of Cars.* One operating a street car, seeing a pedestrian near the track, but not in a position of peril, and not under circumstances warranting the apprehension on the part of a reasonably prudent person that she will presently be in peril, is not under duty to stop his car, even though there is time. (356, 357)

2. INSTRUCTIONS. *Erroneous—Presumption.* No presumption will be indulged that the jury evolved a correct rule from an erroneous instruction. (356)

3. ——*Construed.* Action for an injury attributed to negligence in the operation of a street car. The jury were told by one instruction that if the motor-man failed to stop his car, after, by reasonable care, he could have discovered plaintiff "near or upon the track." Another point of the charge declared it to be the duty of one about to cross the tracks of a street railway, to exercise such care as a reasonably prudent person- would, under like conditions. Still another instruction recited conditions under which the plaintiff must fail, referring to plaintiff, when she "stepped upon the track in front of" the car, or "was about to do so." *Held* that the latter instructions had not the effect to impose upon the phrase ·"near or upon the track," in the first, the sense of "dangerously near, or in a position of peril." Hill and Teller, JJ., dissented. (359)

*Error to El Paso District Court.*—Hon. JAMES OWEN, Judge.

Messrs. CHINN & STRICKLER, for plaintiff in error.

Messrs. ORR, ROBINET & MASON, for defendant in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

The Colorado Springs and Interurban Railway Company, a corporation, owns and operates an electric

railway system upon certain public thoroughfares, including Pike's Peak Avenue and Tejon street, in the City of Colorado Springs. Upon Pike's Peak Avenue it has single tracks extending east and west in the center of the street, used only by westbound cars, and which, at the intersection of the aforesaid thoroughfares, cross double tracks on Tejon street. January 19, 1912, at about 1:30 P. M., Nellie B. Engle, while going north along the west side of Tejon street across Pike's Peak Avenue was struck by a sprinkler, or water car, of the railway company traveling west upon the Pike's Peak Avenue tracks, and sustained certain personal injuries for which she brought an action against the company to recover damages. The complaint alleges that her injuries were caused primarily and proximately by the negligence and carelessness of the railway company in failing to lessen the speed of the car, and give warning to her of the approach thereof, as she was about to cross the track upon which the car was traveling; and that the motorman in charge of the car "saw, or by the exercise of ordinary care should have seen, the plaintiff while proceeding to cross said street and track in time to have prevented the injury which she sustained." The defendant railway company denied any negligence whatever upon its part, and alleged contributory negligence upon the part of the plaintiff. The verdict and judgment were in favor of the plaintiff and the defendant brings the cause here for review.

The evidence shows that the intersection of the street was level and, as to permanent physical obstructions, the entire space clearly visible from any point over which plaintiff was traveling; that the wind was blowing, and the air was cloudy with dust, which to some extent interfered with seeing objects upon the street; that at the time of the accident plaintiff was twenty-four years

of age, and had lived in Colorado Springs for five years immediately preceding the accident and was perfectly familiar with the condition of the streets, the tracks in question, and the operation of the cars thereon; that her sense of sight and hearing were unimpaired, and that she had traveled in each direction on the streets in question, almost daily during her residence in the city; that just before the accident she was walking in a northerly direction, on the west side of Tejon street, across Pike's Peak Avenue; that when she reached a point about fifty-five feet south of the car tracks on Pike's Peak Avenue she stopped, looked east and saw a car on those tracks at the east side of Tejon street, which is about 100 feet in width; that plaintiff thereupon continued her course north until she was within two to five feet of the Pike's Peak Avenue car tracks, when she again stopped; that at this time, the water car was moving westward towards her, and was within ten or twelve feet of her: After so stopping, and while the car was so continuing in its course, she stepped upon the tracks in front of the car, was almost instantly knocked down by it, and sustained the injuries on which she bases her right to recover herein. Upon this point the plaintiff herself testified that she stopped "within four or five feet" immediately south of the Pike's Peak Avenue car tracks, "adjusted" her hat, and "carefully" looked east in the direction from which cars might be coming on that track, listened, but neither saw nor heard a car, and thereupon started across the tracks, and when she was in the middle thereof was struck by the car. The record fails to show any ordinance requiring the sounding of gongs at crossings, or regulating the rate of speed at which cars should travel on the tracks in question.

There was evidence on behalf of the plaintiff that immediately preceding the accident the motorman in

charge of the car was looking north, that is, in a different direction than the car was traveling, and there was no bell sounded; that the motorman had stated immediately after the accident that he had not seen plaintiff, and did not know how the collision had occurred. The motorman testified that he was looking in the direction in which the car was going, saw the plaintiff approaching the track, and sounded the gong; that plaintiff thereupon stopped, but did not turn her head either way; that she started forward, whereupon he did his utmost to stop the car. The car had a force of two men, one of whom handled the water lever whereby the sprinkling was done, while the motorman had exclusive charge of operating the car. Both men were in the front vestibule at the time of the accident and the man in charge of the water was on the north side looking north, as the car crossed Tejon street.

By Instruction No. 4, the jury was told that:

"If you find and believe from a preponderance of all the evidence in the case that the plaintiff Nellie B. Engle, was run over and injured by said sprinkler car on the defendant's street car track at the intersection of Pike's Peak Avenue and Tejon Street at the time alleged and you further find that plaintiff, while exercising reasonable care for her own safety, was crossing or apparently attempting to cross said track, and that the defendant's motorman in charge of said car failed at said time to use reasonable care and caution to discover plaintiff upon or about to cross said track or that he negligently failed to stop said car in time to avoid injuring the plaintiff after having discovered, or by the exercise of reasonable care could have discovered her near or upon the track, and in time to have stopped said car before striking plaintiff, by the exercise of reasonable care in using the appliance at his command for stop-

ping said car, you will find the issues herein joined for the plaintiff.''

It is claimed that this instruction is erroneous in many respects. Without expressing an opinion as to its other provisions, or as to the correctness of other instructions given or refused by the court of which complaint is made, we are certain that in directing the jury that the defendant was liable to plaintiff if the motorman in charge of the water car failed to stop the car after having discovered, or by the exercise of reasonable care, could have discovered, plaintiff ''*near* or upon the track*,''* and in time to have stopped the car before striking her, necessitates a reversal of the judgment.

According to all the evidence, when plaintiff was ''near the track,'' that is, from three to five feet south thereof, she was standing still. Some of her witnesses stated that she was adjusting her hat and clothing, disarranged by the force of the wind. According to her own testimony she not only stopped within four or five feet immediately south of the track, but also carefully listened, and looked in the direction from which the car was coming. Had the motorman seen the plaintiff ''near'' the track, under the circumstances and conditions detailed in evidence by herself and her witnesses, it would not follow that he had reason therefrom to believe that she was in a position of peril or would presently so be. To step ''upon or near'' the track *under circumstances and conditions that would cause a reasonably prudent man to believe that plaintiff was in a position of peril* is quite a different matter than being only ''near or upon the track.'' The language of the instruction clearly sets out an erroneous principle of law and there can be no presumption that the jury evolved a correct principle therefrom. It directs the jury to return a verdict against the defendant if they believed that the

motorman in charge of the car saw or by the exercise of
ordinary care could have seen, the plaintiff "near or
upon" the car tracks in time to stop the car before in-
juring her, even though at such time the plaintiff was
not in a position of peril and the motorman as a reason-
ably prudent man, had no cause to believe that she would
presently be in such position.   This is not the law.   A
defendant should not be held liable for the failure of its
servant to look, when, if he had looked and seen all the
circumstances and conditions existing, no duty to a plain-
tiff to act otherwise than he did, could have arisen.

We have heretofore, in *Chicago Company v. Church,*
49 Colo. 582, 590, 114 Pac. 299, condemned an instruction
because of the very vice embodied in the one now under
consideration.   While in that case the injury of which
complaint was made was for the death of cattle killed
at a public road crossing by a railroad train, the prin-
ciple of law involved was the same as we are now con-
sidering.   We there said:

"The court instructed the jury that if they believed
from the evidence 'that the persons in charge of the en-
gine and train of cars in question, by ordinary care, skill
and prudence, could have seen the animals, or that they
did see them in season, so that by the use of ordinary
care and skill, and without danger to the train, they
might have stopped the train before striking the animals
and thus avoided the injury, and did not do so, this
would be such negligence as would render the defendant
liable for the injury and damage sustained,' unless
plaintiff's own fault contributed to the injury.   Under
the circumstances of this case, we think the instruction
erroneous.   It, in effect, declares that if the employes in
charge of the train did see, or in the exercise of ordinary
diligence, could have seen the animals, regardless of
where they were, so that by ordinary care the train

might have been stopped before striking the animals, the defendant was liable.  We do not think the defendant was required to stop or slacken the speed of its train, until its servants saw, or, by the exercise of reasonable care, could have seen the cattle in a position of danger or, at least, in such close proximity to danger as to cause a reasonably prudent person to believe that they were likely to be injured unless proper effort was put forth to avoid it.  'Under this instruction the jury might well have felt authorized to find the requisite negligence, if the servants say the cow anywhere *near* the track, and failed to stop or check up the train, regardless of any indication of a movement on her part to approach the track.' "

So, in the case at bar, the defendant was not required to stop or slacken the speed of the car merely because the plaintiff was .near or even upon its tracks. Actual or constructive notice on the part of the motorman, of peril or impending danger to the plaintiff was a condition precedent to action in that respect.  This principle is discussed and applied in *Kent v. Treworgy,* 22 Colo. App. 441, 444, 125 Pac. 128, 129, in the following language:

"Again, these instructions, as we view them, are fatally defective from yet another point of view.  They advise the jury, in effect, that if the defendant could have stopped or checked his machine *at any time after first seeing the approach of the plaintiff on his bicycle,* then he was guilty of negligence *per se* if he, the defendant, failed to stop the machine.  *  *  *  If the testimony offered by plaintiff, especially that of the driver of the sand wagon, be accepted, then the defendant did see, or could readily have seen, the boys approaching on their wheel for some time before the accident, and before they were in any peril whatever.  These instructions,

especially No. 6, advise the jury that it was the duty of the defendant to stop as soon as he had seen the boys approaching on the wheel, wholly regardless of whether they were or were not, at the time he first saw them in a perilous position.''

It is claimed, however, that the words "near or upon" as used in the instruction, in connection with all the instructions given, could have no other meaning than "dangerously near, or in a position of peril." We are unable to give our assent to this contention. Instruction No. 7 defines the duty of a pedestrian, about to attempt to cross tracks of a street railway company, to look out for himself and exercise such ordinary care as would be exercised by a reasonably prudent person under like conditions, and with No. 8 makes a concrete application of that doctrine to the facts of this case. The conditions therein recited, under which it is stated that plaintiff could not maintain her cause of action, refer to her when she "stepped upon the car tracks in front of" the car, or when "plaintiff was about to place herself in a position of danger by stepping on said tracks." But Instruction No. 4, in attempting to make a concrete application of the rule as to the duty of the defendant, declares, substantially, that defendant must respond in damages if the motorman failed to stop his car in time to avoid injuring the plaintiff, if he saw, or by the exercise of reasonable care could have discovered her "near or upon the track" in time to have stopped the car before striking her. When considered together, we have the declaration as found in Instructions Nos. 7 and 8 that plaintiff can not recover if the jury finds certain conditions and facts existed "when she stepped upon the car track in front of" the car or was "about to place herself in a position of danger by stepping on said tracks;" and by Instruction No. 4 that defendant should

be .held liable if they find that certain conditions and facts existed when the plaintiff was either "near or upon" the track without reference to the danger or peril if any, to which she was thereby subjected. Instructions of such character, even though some declare correct principles of law, are clearly misleading and furnish no correct guide to the jury, and the giving thereof constitutes error.

The opinion heretofore rendered herein by a Department of this Court is, therefore, withdrawn, the judgment reversed and the cause remanded.

*Judgment reversed.*

Decision *en banc.*

Mr. JUSTICE HILL and Mr. JUSTICE TELLER dissent.

Mr. JUSTICE HILL dissenting:

When considered in connection with the other instructions and applied to the evidence, I cannot agree that the giving of Instruction No. 4 was prejudicial error. It left the question of the negligence of the defendant, when applied to the particular facts of this case, to the jury. This is the rule heretofore approved by this court.—*R. G. W. Co. v. Boyd,* 44 Colo. 119, 96 Pac. 781.

Neither can I altogether agree with the reasoning wherein the opinion states. "Had the motorman seen the plaintiff 'near' the track, under the circumstances and conditions detailed in evidence by herself and her witnesses, it would not follow that he had reason therefrom to believe that she was in a position of peril or would presently so be." That would depend entirely upon the circumstances; such might or might not be the case, and was a question for the jury to determine. The

motorman was protected from the storm by a glass front in the vestibule, and according to the testimony of numerous witnesses, had he been looking in the direction the car was going, instead of looking north, he probably would have seen the plaintiff struggling with her wearing apparel in an attempt to cross the street in a severe windstorm, with the dust and sand blowing in her face, with a kind of whirlwind filled with dust at the time, which might have prevented her from seeing the car, and hence make her oblivious of her danger; for which reasons, the question of her being in a position of peril depended, to a certain extent, upon her knowledge of the approach of the car, or her ability to see it upon account of the storm, and if the jury were of the opinion, from the evidence, that these circumstances and conditions would cause a reasonably prudent man to believe that she was in a position of peril, upon account of these facts when near the track, they would be justified in thus finding, for which reason, as there used, the words "near or upon" could have no other meaning than dangerously near the tracks, that is in a dangerous position; the context thus indicates and the jury could not have understood it otherwise, especially when considered in connection with the other instructions.

In Instruction No. 6, her position is spoken of as a dangerous one. In No. 7, the jury were told.

"That it is the duty of a pedestrian about to attempt to cross the tracks   *   *   *   to look out for himself and to exercise such ordinary care as would be exercised by a reasonably prudent person under the attending circumstances. If you should find and   *   *   *   that the plaintiff, before stepping upon the car tracks of defendant, failed to exercise the care above mentioned, then you should return a verdict for the defendant."

The words "about to cross the tracks" "before stepping upon the car tracks, etc., also "car approaching stepped upon track" and similar phrases are found throughout the instructions which clearly indicate that the word "near" as used in Instruction No. 4, was intended in connection with danger, meaning dangerously near and was certainly thus understood by the jury.

By Instruction No. 8, the jury were told:

"If you shall find * * * that the plaintiff, just before stepping upon the tracks of the defendant company, stopped and looked in the direction of the water car of the defendant, and that under the circumstances a reasonably prudent person operating said car would have had a right to believe from said acts of the plaintiff that she had seen said car approaching, and did not intend to step upon said tracks until after said car had approached the point opposite which she was standing, then the defendant company was under no obligation to slacken the speed of its said car, and that those in charge of the car had a right to permit it to continue in a westerly direction without stopping it until such time as in the exercise of ordinary care those in charge of the car should have known that the plaintiff was about to place herself in a position of danger by stepping on said tracks."

We thus see that the company's side of this question was fairly and fully submitted to the jury on the testimony; that the company's rights in this respect were fully protected by the latter part of this instruction; that if there was any uncertainty as to the proper meaning to be given that portion of Instruction No. 4 held bad, it was made certain and altogether cured by the giving of Instruction No. 8; all of which convinces me that there was no prejudicial error in the instructions.

The case of *Chicago Company v. Church,* 49 Colo. 582, 114 Pac. 299, refers to a rule concerning livestock killed by a railroad train in the country, and I do not think is applicable to the facts here. I would hate, at least, to think that the degree of care required by a street railway company, at a busy corner, in the heart of a city, is to be measured by the same rules involving the killing of livestock by railroad trains in the country. Besides, there is no similarity in the instructions, as a reading of them will disclose. The one in the Church case says nothing about the cattle being near or upon the track, and for this reason, as the opinion says:

"It, in effect, declares that if the employees in charge of the train did see, or, in the exercise of ordinary diligence, could have seen the animals, regardless of where they were, so that by ordinary care the train might have been stopped before striking the animals, the defendant was liable." But such is not the case here. This instruction tells the jury.

"If   *   *   *   the defendant's motorman   *   *   * by the exercise of reasonable care could have discovered her near or upon the track, and in time to have stopped said car," etc.

The word "near" is coupled with "or upon," which in the way used meant her location immediately preceding going upon the track, which is also convincing that as used it meant dangerously near and in the same position which Instruction No. 8 refers to wherein it says "just before stepping upon the tracks," and as therein used the opinion appears to concede that it makes a correct concrete application of the same doctrine to the facts of the case.

As I read it, the case of *Kent v. Treworgy,* 22 Colo. App. 441, 125 Pac. 128, is not applicable to the facts here upon account of the dissimilarity in the instruc-

tions.  In the Kent case the instructions assumed to tell the jury what constituted negligence, it was for this reason they were held bad.  While in Instruction No. 4 the court avoids this and throughout has left it to the jury to determine whether the motorman was or was not negligent, and whether he did or did not use reasonable care concerning any phase of the case.  It also imposed the exercise of due care upon the plaintiff, and Instruction No. 8 left it to the jury to determine whether by her actions he had reason to believe she was about to go upon the track or not; while in the Kent case no duty or liability was imposed upon the plaintiff, which made the instructions specially objectionable, as pointed out by the court.

Mr. JUSTICE TELLER concurs in the views herein expressed.

Decided April 6, A. D. 1914.  Rehearing granted and judgment reversed April 5, A. D. 1915.