## No. 8760.

### COLORADO SPRINGS AND INTERURBAN RAILROAD COMPANY *v*. KELLEY.

1. APPEAL AND ERROR—*Findings on Conflicting Evidence,* will not be disturbed.

2. STREET RAILWAY COMPANY—*Negligence in Operation.* Where one operating a railway car upon the streets of a city fails to give any warning or signal as he approaches a street crossing, or to look in the direction in which he is moving, he is guilty of inexcusable negligence.

3. NEW TRIAL—*Excessive Damages.* A lady of 24 years, and earning a salary of only $40.00 per month, sustained, by the negligence of defendant, an injury resulting in an amputation of one of her lower limbs below the knee. She was awarded $17,000 as damages. There was nothing in the record to evidence passion or prejudice on the part of the jury. The court refused to disturb the verdict, even though upon a former trial the award was but little more than one-half that in question.

*Error to El Paso District Court, Hon. John E. Little, Judge.*

Mr. SAMUEL H. KINSLEY, Messrs. CHINN & STRICKLER, for plaintiffs in error.

Messrs. ORR, ROBINETT & MASON, Mr. L. W. CUNNINGHAM, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THE defendant in error recovered a verdict and judgment against the plaintiff in error in the sum of $17,000 as damages on account of personal injuries alleged to have been caused by the negligence of the tramway company. The case is before us for review upon two presented assignments of error, "That the damages awarded are excessive, appearing to have been given under the influence of passion and prejudice;" and that "The trial court erred in refusing to instruct the jury to return a verdict for the railway company, for the reason that the evidence was not sufficient to support any verdict and judgment for Mrs.

Kelley." The cause was before us upon a verdict and judgment in favor of the plaintiff, and was remanded for a new trial, because of certain instructions held to have been erroneous and prejudicial. *Colo. Springs Co. v. Engle,* 58 Colo. 352, 147 Pac. 666.

In the vicinity of the accident the Railway Company operated two lines of track, crossing at right angles at the intersection of Pike's Peak avenue and Tejon street, in Colorado Springs. Pike's Peak avenue runs east and west; Tejon street runs north and south; both are unusually wide streets. At this point of intersection the railway company operates a double track north and south on Tejon street. On Pike's Peak avenue, it operates but one track and all cars run west, returning easterly by another street. At a point near the east side of Tejon street, a line of cars leaves Pike's Peak avenue and turns south on Tejon street. So that whether a car be one which is to proceed westward from the intersection along Pike's Peak, or whether it be one that is to turn south on Tejon street, both proceed along the single track westward to a point near the east side of Tejon street, and apparently stop before proceeding further on either street. Admittedly this intersection of these two streets is a busy, if not the busiest, in the city, for street car, vehicle and pedestrian traffic.

The testimony is in agreement that a violent windstorm was prevailing at the time of the accident, with the air so filled with dust and sand as to make it quite difficult to see with any degree of clearness for an appreciable distance, and the wind was blowing with such velocity as to make it difficult also for a pedestrian to proceed against it.

The plaintiff started from a point on the south side of Pike's Peak avenue, on the crossing on the west side of Tejon street, proceeded along the crossing toward the north side of Pike's Peak avenue, and when on the track was struck and injured by the car in question, which was not a passenger car, but a large and heavy water car used for sprinkling the streets.

We think there was sufficient evidence to clearly justify the jury in the finding of negligence in the operation of the car and also that the jury was likewise justified in finding no sufficient proof of contributory negligence, and therefore under the settled rule of this court these findings will not be disturbed.

It will serve no good purpose to discuss the law in such cases, as repeated decisions of this court seem to have well covered every phase of it, and in harmony with the very complete instructions of the court covering the subject, and against which no error is assigned.

The relative rights, duties and obligations of carriers, street car companies, travelers, and pedestrians upon streets and at street car crossings, will be found quite fully discussed in the following cases: *Nichols v. B. & Q. R. A. Co.*, 44 Colo. 501; 98 Pac. 808; *Denver Tramway Co. v. Carson*, 21 Colo. App. 604; *Denver Tramway Co. v. Gustafson*, 21 Colo. App. 478, 123 Pac. 680; *Denver Tramway Co. v. Martin*, 44 Colo. 324, 98 Pac. 836; *Philbin v. Denver Tramway Co.*, 36 Colo. 331, 85 Pac. 630; *Phillips, et al. v. Denver Tramway Co.*, 53 Colo. 458, 128 Pac. 460, Ann Cas. 1914 B, 29; *Denver Tramway Co. v. Wright*, 47·Colo. 366, 107 Pac. 1074; *Denver Tramway Co. v. Brown*, 57 Colo. 484, 143 Pac. 364.

It is however contended that the plaintiff had stopped within a few feet of the track, as if waiting for the car to pass before attempting to cross, and that the motorman thus had a right to rely on the presumption that she would not incur the danger. But this is not justified by the testimony.

The motorman, witness for the defendant, testified to the contrary. He said: "I did not see her before she was within five or six feet of the track. At the time I noticed her she was in motion, going north, while she was under my observation she didn't exactly stop but hesitated."

The testimony is overwhelming that she did not stop except as she may have been swayed by the strong wind

against which she was walking. It is true that the plaintiff did say that she stopped, but in further testimony she explained that "I hesitated and I had to get hold of my hat, and my clothes were blowing; it seemed to be a sudden bad spell, a regular whirlwind." This last testimony is corroborated by that of other witnesses.

The plaintiff testifies that at the time she started from the curbing she looked and saw a car on the east side of Tejon street, but did not know whether or not it was the car that struck her; that she continued to look and listen while attempting to cross the street, but did not see or hear anything to indicate its movement until she was struck. The court fully advised the jury as to the rule of law in this regard, in the following instruction:

"You are instructed that if you find from a preponderance of the evidence that the plaintiff, just before stepping upon the tracks of the defendant company, stopped and looked in the direction of the water car of the defendant, and that under the circumstances a reasonably prudent person in the exercise of ordinary care operating said car would have a right to believe from said acts of plaintiff that she had seen said car approaching and did not intend to step upon said tracks until after said car had approached a point opposite which she was standing, then the defendant company was under no obligation to slacken the speed of its said car, and that those in charge of the car had a right to permit it to continue in a westerly direction without stopping it until such time as in the exercise of ordinary care those in charge of the car knew or should have known that the plaintiff was about to place herself in a position of danger, by stepping on said tracks, or so near thereto that the car could not pass without striking her, and the person operating said car was then able by means of the appliances with which it was equipped to have avoided striking the plaintiff."

It is plain that notwithstanding the wind and dust storm, and the time of day when many pedestrians might reason-

ably be expected to be crossing the street, no gong was sounded nor other warning given, or if so then not in time to give effective warning, and the jury was justified in finding from the evidence that the motorman was not himself looking in the direction he was going until it was too late to avoid the accident. His negligence in this respect appears to be inexcusable, if not culpable. It is true that in this case as in like cases generally, there is conflict in the evidence, but this must be solved by the jury and not by the court. The testimony in this case does not justify the application of the rule so rarely exercised, whereby a jury's findings of fact may be disturbed.

As relates to the contention of excessive damage, we must bear in mind and be governed by the rule laid down by Chancellor Kent more than a century since, and genererally adhered to by all courts, and by this court; that it is exclusively the province of the jury to estimate and assess the damages, and that the amount to be allowed in such cases, rests largely in their sound discretion. He said:

"The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partially or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say, that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries."

And as was well said by Justice Story in *Thurston v. Martin*, 5 Mason 497, Fed. Cas. No. 14018:

"It is one thing for a court to administer its own measure of damages in a case properly before it, and quite an-

other thing to set aside the verdict of a jury because it exceeds that measure."

No case has been cited from this court and we know of none, wherein there has been a departure from the rule stated.

Counsel cite *Tunnel Mining Co. v. Cooper,* 50 Colo. 400, to sustain their contention that the damage is excessive. But that case is not in point except it be to sustain the general rule. There was no evidence to show that Cooper had been maimed, or even permanently injured, and the verdict was for $38,750. This verdict under the circumstances was clearly "so outrageous as to strike every one with its enormity and injustice, and to induce the court to believe that the jury must have acted from prejudice, partiality or corruption." It was so outrageous that the trial court refused to sanction it and compelled the party to either remit nearly three-fourths of it, or submit to a new trial. And this court rightfully held that the entire verdict was vitiated because of the finding of the trial court that the verdict was rendered under the influence of passion or prejudice.

But there is no such finding here, nor is there any evidence of passion or prejudice, or that the amount of the award was other than the honest and combined judgment of the jurors. The trial court refused to disturb the award, and therefore sanctioned it.

It may seem to be a large amount, perhaps larger than the average in similar cases, though it does not stand out as an exception, nor even unusual. It may have been greater than the trial court would have awarded, or greater than this court would have felt justified in giving. But the power to make the award was within the constitutional and exclusive province of the jury, and courts may not invade that power, nor disturb it, except for injustice manifestly appearing.

Counsel urge that a smaller award was given on the former trial being slightly more than half; that it is greater than the average in similar cases; and that the interest on the amount would be greater than the salary the plaintiff was earning at the time.

While these matters may be considered in reaching a conclusion, yet neither, nor all of such considerations together, are controlling. There is yet to be considered physical pain; mental suffering, past and future; incapacity for many activities; life expectancy; occupation, and in this case the fact that plaintiff was maimed in such manner as to be handicapped for life.

The plaintiff was at the time a young woman twenty-four years of age, her foot and ankle were so crushed as to necessitate amputation of the leg just below the knee. It is true that she was at the time earning but forty dollars per month, as a stenographer, but it cannot be said that this must mark her earning power throughout her life, while it may be considered as a factor in making the award. We cannot say that the award was not the result of the serious consideration and honest judgment of the jury.

The judgment is affirmed.

*En banc.*

Garrigues, Bailey and White, JJ., dissent.

Decided June 3, A. D. 1918. Rehearing denied December 2, A. D. 1918.