FLORES, PLAINTIFF AND APPELLEE, *v.* SUCCESSORS OF PÉREZ BROTHERS, DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of San Juan in an Action for Damages.

No. 2416.—Decided July 29, 1921.

NEGLIGENCE—PLEADING.—A general averment of negligence in the management of a vehicle, in the absence of a request for greater particularity, is a sufficient averment.

ID.—NOTICE.—When a dangerous instrumentality like an automobile backs, or is about to back, the driver should first give notice and ascertain that he can do so without injury to persons or property.  The law requires trucks to have a lookout, or to have a mirror to show whether anyone is behind, but although in this case the appellants did not comply with the law, mere compliance would not have exempted them from liability.

ID.—MEASURE OF DAMAGES.—The recovery of damages is compensatory and the determination of the amount does not depend upon the capacity of the defendant to pay the same, or, upon his degree of negligence.  It depends rather upon the condition of the injured person and his sufferings, and perhaps indirectly upon the greater or less wealth of the community.

ID.—ID.—The appellate court may determine the amount of damages, especially when there is no other permanent injury than the loss of a foot or a leg.

ID.—ID.—In determining the amount of damages the following should be considered:  The expenses of the cure, the value of the time lost, the mental and physical suffering and the permanent reduction of earning capacity, the last being the most varying element in fixing the damages.  Courts make no

distinction between a youth of twenty-one years and a minor and the latter has in his favor the presumption that he will be a normal person able to earn as much as such a person would earn.

The facts are stated in the opinion.

*Messrs. Chas. Hartzell* and *F. Ramírez de Arellano* for the appellants.

*Mr. J. H. Brown* for the appellee.

Mr. Justice Wolf delivered the opinion of the court.

The appellants in this case did not file an assignment of errors, but discussed the alleged errors *seriatim* in their brief. The appellee, however, summed up the contested matters. The first one relates to the sufficiency of the complaint and principally to whether there was a due averment of negligence. It would have been better if the complaint had set forth that the automobile of the defendant, in backing, negligently injured the complainant, but we, with most other courts, have generally held that a general averment of negligence in the management of a vehicle, in the absence of a request for greater particularity, is a sufficient averment. *House* v. *Meyer,* 100 Cal. 592, 35 Pac. 308; 29 Cyc. 570, 571; *Cunningham* v. *Los Angeles R. R. Co.,* 115 Cal. 561, 47 Pac. 452.

We agree with the appellee and the court below that there was practically no proof of contributory negligence. According to the court, and we see no reason to differ, the boy had no notice that the standing truck was likely to back, and we likewise do not find that the defendant proved that any warning was given to the boy that the truck was about to back.

The appellants also maintain that the evidence does not disclose negligence on the part of the defendant, and that the weight of the proof is strongly in their favor. The law is clear that when a dangerous instrumentality like an automobile backs, or is about to back, the driver should first ascertain that he can do so without injury to persons or prop-

erty. The law requires trucks to have a lookout, or else to have a mirror to find out whether anyone is behind the machine, but while we find that the appellants did not comply with the law, a mere compliance would not necessarily exempt a defendant from liability. The essential thing is that people who are behind the truck must be notified before the truck is set in motion. While some of the defendant's witnesses gave testimony tending to show that the truck-driver first advised this boy and the others to get from behind the automobile, the weight of the evidence is that the driver, although he testified to the contrary, never got down from his truck and that no notice was ever brought home to the boys. The statement of the truck-driver and one of his witnesses that the boys were warned is not supported by the rest of the proof and does not satisfy our minds. We doubt, moreover, where children are concerned, whether a mere warning would be enough; but the rule is that before a machine is set in motion the driver must have sufficient reason to believe that there is no person or property in his way. The court below felt the failure of the truck-driver so strongly that the judge said that in his judicial experience he had rarely seen proof that was so satisfactory and so completely satisfied his conscience.

The only remaining ground of error is that the judgment of $17,000 is excessive. The boy, eleven years old, had to suffer an amputation of his foot above the ankle. The rule in all the United States, as well as in this jurisdiction, is compensation to the injured person. The determination of the amount, as a matter of law, never depends upon the capacity of the defendant to pay the same or upon his degree of negligence. The courts have had a tendency to say that the loss of a leg or of an arm or other member of the body, in a certain sense can hardly be compensated, and frequently the courts will determine whether a verdict is excessive or not by a reference to other verdicts in the same State. Neces-

sarily in the same State verdicts would differ in different communities, depending upon the attitude of the juries of the particular community. It would follow that in States or communities of great wealth the verdicts would be larger than they would be in smaller or poorer communities. We do not doubt that, whether consciously or not, the wealth of a community does play a part in determining the size of a verdict both by the jury in the first place and by the reviewing courts.

The rule is that a jury is the judge of the facts, and hence reviewing courts are very reluctant to set verdicts aside, unless on the ground of passion or prejudice. On the other hand, at least one court has said that passion or prejudice may be deduced from the excessiveness of the verdict. Frequently where verdicts have been large the courts have so characterized them while upholding them, and have also commented upon the fact that the verdict was probably larger than the judge below would have given or the reviewing judges would have allowed if they had been the triers. The idea in the United States that the jury are the judges of the facts is so strong that the courts have to see a considerable excess before interfering. Where a judge tries a case, as in Porto Rico, it would ordinarily be supposed that he would be less influenced by passion or prejudice than a jury. Nevertheless, where the facts are undisputed with respect to the injury, the reviewing court has practically the same right to consider the grounds of compensation as had the court below. Given the unquestioned circumstances in which the plaintiff finds himself and the injury suffered, the appellate court is in good condition to limit the amount of the award, especially where there is no other permanent injury than the loss of a foot or a leg, as in the present case.

The measure of damages has been variously expressed, and perhaps a satisfying measure was set forth in *Louisville Gas Co.* v. *Fuller,* 92 S. W. 566, as being the expense of the

·cure, the value of the time lost, reasonable compensation for physical and mental suffering and for permanent reduction of earning capacity.

In *Texas & New Orleans R. R. Co.* v. *Brouillette,* 130 S. W. 890, there was a child two years and seven months old. The court said "that he will suffer mentally and physically in the future is a conclusion justified by the facts proven. But there was no physical injury other than the loss of the leg. With that exception he is a healthy, well developed, normal child. True it is that it will be deprived of many pleasures and privileges of boyhood and in manhood will be seriously handicapped in the race of life; but we think the verdict and judgment were for a greater amount than the evidence justified," and the court reduced the verdict from $30,000 to $20,000.

In Virginia $18,000 for the loss of a leg, including $3,000 for medical fees, was not considered excessive. *Norfolk Southern R. Co.* v. *Crocker,* 84 S. E. 681. $15,000 was not considered excessive in *Bugge* v. *Seattle Electric Co.,* 103 Pac. 826, for the loss of a foot. The plaintiff was a young woman, 31 years old, unmarried, earning $35 as a house-keeper, with room and board estimated at $30 or $40 a month. The doctor's bills were a little over $500. $17,000 was not considered excessive in the case of *Colorado Springs, Etc., Ry. Co.* v. *Kelley,* 176 Pac. 307, for the loss of a foot, where a young woman of 24 years of age was earning $40 a month as a stenographer. The court held that it could not be said that this must mark her earning power throughout her life. $15,000 was considered not to be excessive for a boy 14 years old in *Texas, Etc.,* v. *McLeod,* 131 S. W. 311, and verdicts as high as $22,500 have been sustained by the various courts of New York State. On the other hand, Missouri has fixed a rate of compensation for injuries to a leg or foot as not to exceed $10,000, and Kentucky has generally done a similar thing. If one reviews the cases in Louisiana

as set forth in the second La. Digest under the heading of Damages, para. 105, one can see that a verdict above $10,000 in that State would be considered excessive. In 1910 in *Williams* v. *W. R. Pickering Lumber Co.*, 125 La. 1087, the court reduced a verdict from $20,078, for injuries sustained by a brakeman, to $12,000 and here the complainant had lost an arm and a leg. After reviewing the cases where similar verdicts had been sustained for large amounts in Louisiana, the court said that the counsel for defendant cited cases where verdicts for the loss of a limb of from $2,000 to $8,000 had been affirmed. "We freely admit," proceeded the court, "that the cases cited can not be reconciled and that there are no rules of law on the subject-matter." In 1911 that court held that $2,500 was inadequate compensation to a boy twenty months old for the loss of one leg below the knee and the mashing of flesh which in the healing left badly scarred tissue on the other foot, "even though the circumstances are such that the conditions can be ameliorated by the use of an artificial limb," and the amount was increased to $5,000. *Danna* v. *City of Monroe*, 129 La. 138. In 1913 the court in *Bell* v. *Houston & S. R. Co.*, 132 La. 86, held that a judgment for $10,000 for the loss of a foot was excessive and would be reduced to $7,500. The court in 1912 had said that in view of the decrease in purchasing power of money, $7,500 was not too much to allow a man for the loss of a foot, who depended upon his manual labor for his livelihood, increasing the judgment to that amount. *Cross* v. *Lee Lumber Co.*, 130 La. 66. In *El Paso Electric Ry. Co.* v. *Allen*, 208 S. W. 739, the court, after sustaining a verdict for $15,000 where a child's limb was crushed to the knee necessitating an amputation at the knee joint, reviews the Texas cases and shows that its review of the verdicts will depend to a large extent on earning capacity. In *Standard Oil Co.* v. *Titus*, 219 S. W. 1077, the Court of Appeals of Kentucky decided that $15,200 was not an excessive award

to a brakeman thirty-five years old for an injury such as to necessitate amputation of a leg eight inches below the knee. The court said: "Since the cost of living has greatly increased and the purchase power of a dollar is much less than it used to be, we conclude that the verdict is not excessive." See also 14 L. R. A. 677; 17 C. J. 1104, 1110.

The review of the cases that we have made convinces us that the most variable element in determining the compensation of a person is the earning capacity. The courts make no particular distinction between a youth of twenty-one years and a minor. A child has in its favor every presumption that it will be a normal person able to earn what such a person would earn.

If, then, we examine the jurisprudence as established by the courts of the United States and founded on similar accidents, we find that on occasions verdicts have been made and allowed to stand greater than $17,000, and that on the other hand a lower limit has been fixed by some courts.

If we go through our own decisions we find no precedent for an award of this amount, although the exact matter has never been squarely presented before. The tendency of our courts has been very conservative, perhaps consciously or unconciously following the tradition and knowing that the country is not rich. There is a considerable difference in the wealth *per capita* of the continent and of the Island.

Considering however all these things and the respect due to the judgment of the court below, which had the boy before it and could judge to a certain extent of his possibilities, we shall reduce the judgment to $12,000, but without meaning to indicate that this amount shall be a precedent even in cases of similar accidents.

The judgment should be modified as indicated and otherwise affirmed.

*Modified and affirmed.*

Justices Del Toro and Hutchison concurred.

Chief Justice Hernández and Justice Aldrey concurred in the judgment except as regards the amount of damages which, in their opinion, should be no more than $5,000.