No. 17,577.

W. K. DAWKINS *v.* REYMUNDA CHAVEZ.

(285 P. [2d] 821)

Decided June 27, 1955. Rehearing denied August 8, 1955.

Messrs. WOLVINGTON & WORMWOOD, for plaintiff in error.

Mr. FRANK A. BRUNO, GAIL H. HADDOCK, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will herein refer to the parties as they appeared in the trial court, where plaintiff in error was defendant and defendant in error was plaintiff.

This action was brought by plaintiff Reymunda Chavez against defendant W. K. Dawkins to obtain a judgment for damages sustained by her as a result of the death of her nine-year-old daughter allegedly caused by defendant while driving his automobile recklessly, negligently and carelessly in the city of Denver. In her complaint plaintiff included an allegation that defendant had consumed large portions of intoxicating liquor immediately prior to the incident which resulted in the death of the

child, and that he was in no condition to operate a motor vehicle on a public highway at the time of the fatal accident.

Defendant by answer admitted ownership of the automobile described by plaintiff, but denied that he was driving same at the time of the accident.

The case was tried to a jury, and a verdict rendered in favor of plaintiff for the sum of $10,000.00. After motion for a new trial was filed and overruled, judgment was entered on the verdict, and defendant, seeking reversal of the judgment, brings the case to this Court for review by writ of error.

Plaintiff's daughter was struck while crossing an intersection at California and Downing streets at about 6:45 P.M. March 15, 1953. The car which struck her was traveling south on Downing street at a high rate of speed. In view of the grounds for reversal of the judgment urged by counsel for defendant, we will outline a more detailed statement of the evidence in connection with the treatment of the matters which they contend constitute reversible error. Their argument consists of four major points as follows:

1. The trial court erred in permitting the witness, Grace Martin, to testify concerning her identification of defendant while he was in a "line-up" at the police department.

2. That there was insufficient evidence connecting defendant with the accident to warrant submission of the case to the jury.

3. That the trial court erred in instructing the jury with reference to the question of driving an automobile while under the influence of intoxicating liquor.

4. That the verdict of the jury was excessive.

Questions to be Determined.

First: *In the civil action brought by plaintiff to secure a judgment for damages for the alleged wrongful death of her child, was it error for the trial court to admit evidence that a witness identified defendant, the day after*

*the child was killed, while he was in a "line-up" in the custody of the police?*

This question is answered in the negative. The circumstances giving rise to the foregoing question are, briefly, as follows: Grace Martin testified that she was a waitress in a "drive-in" where food and drinks were served; that on the date in question she was on duty "outside" beginning at 6:00 P.M.; that within twenty to thirty minutes after she went on duty outside defendant drove in and ordered some beer, which she served him; that he was alone in the car; that ten or fifteen minutes after she served him the beer she noticed his car was gone; and that the "drive-in" where she worked was a block or so north of the scene of the accident. The evidence further disclosed, without contradiction, that the automobile owned by defendant was picked up and taken to the police station on the following day.

A police officer was called as a witness by counsel for plaintiff, and the following testimony was given in the course of his direct examination:

"Q. Did you show Miss Martin the 1941 Buick? Mr. Wormwood: I object to this, Miss Martin has testified. The Court: We will have to wait until she comes back. Mr. Bruno: If your Honor please, this witness can testify as to what he did. The Court: We will let him answer. Did you show her the 1941 Buick? The Witness: Yes, I did.

\* \* \*

"Q. Did you have Miss Martin look at the defendant in this action on that day? A. I do not recall the date. I did have Miss Martin look at the defendant. Q. Under what circumstances? Mr. Wormwood: I object to all this, if the court please. I object to this questioning. The witness has testified. The Court: The only thing is we save time. He would be allowed to testify to this after she testified.

(Argument of counsel.)

"The Court: He may answer. Mr. Wormwood: May

the record show my objection to this entire line of questioning? The Court: Yes. Q. Under what circumstances did you have her look at the defendant? A. I arranged a police show-up of five or six men at the city jail. Mr. Wormwood: I object to that talk about the city jail show-up. That has nothing to do with a civil case and I ask for a mistrial. The Court: Objection overruled. He may answer. Q. You may answer. A. I stated I arranged a police show-up of five or six men, I do not recall the exact number. In this show-up there were two or three colored men along with one or two white men, and he was picked out as being on the Cowboy Inn lot on Sunday night, March 15th. Mr. Wormwood: I assume the court denied my motion for a mistrial? The Court: Yes."

After the foregoing testimony by the police officer, the witness Grace Martin was recalled, and during the course of her continued examination she testified as follows:

"Q. Now, did you see Mr. Dawkins at any time after you served him the beer? A. You mean on Sunday? Q. Well, any time after you served him the beer. A. Yes, at the Police Building. Q. And when was that? A. When they had a line-up. Q. When they had a line-up? Mr. Wormwood: I object to this, as I did the other day, I think. The Court: Objection overruled and your exception noted, and it will not be necessary to make specific objections to all these questions. Q. The Judge said you may answer. A. What was the question? Q. Tell the jury the circumstances under which you saw Mr. Dawkins in the line-up. A. Well, they brought out these three men. Q. Where you were? A. They just asked us to point out whom we recognized, and I recognized Mr. Dawkins. Q. State whether or not you pointed him out at that time? A. I did."

The point involved in the objection to the above-quoted testimony is stated by defendant's counsel as follows:

"The witness Martin, having stated that she knew the defendant by sight due to the fact that he had been stop-

ping at the Cowboy Inn for many weeks and due to the fact that she had identified him in the court room, eliminated the necessity of having the witness Martin and the police officer then testify regarding the defendant being in a police line-up. The very words 'police line-up' carry with them a stigma, and who is to say how much harm was done the defendant by allowing such testimony, such prejudicial testimony, to be presented to them? We submit that this error alone was, and is, sufficient to require a reversal of this case."

Counsel for defendant further state, in argument:

"Our courts have been particularly zealous through the years in keeping out of the record, in a civil action, the fact that the defendant had been charged with a traffic violation or crime in the criminal courts, and also in keeping out all evidence pertaining to what occurred there."

■ We find no merit in this argument. The fact that Miss Martin was able to, and did, identify defendant on the day following the fatal accident, was competent evidence for the jury's consideration, and had probative value in determining the credibility which the jury might give the identification made by her upon the trial of the case which took place sixteen months after the accident. There was no testimony concerning any prosecution of defendant for the violation of a municipal ordinance, and no reference was made to any case of a criminal or quasi criminal nature. The relevancy and competency of evidence cannot be entirely destroyed because the facts related happened to occur at a police station. Evidence which has probative value, and is in all respects competent, cannot be rendered inadmissible simply because it relates to an incident which took place in the presence of officers of the law in the discharge of their official duties. Facts within the knowledge of police officers, acquired by them at police headquarters in the discharge of their duties, can be established by their evidence in the trial of any issue, whether civil or criminal

in nature, if the evidence otherwise is material and competent.

With reference to the argument that Miss Martin's identification, made on the day following the accident, should not have been admitted in evidence because she identified defendant in the court room upon the trial, we hold that the first identification was properly admitted in evidence. We find ample authority in the decided cases and in sound reasoning for reaching this conclusion. In Vol. 4, Wigmore on Evidence (3d ed.), page 208, section 1130, we find the following:

"Ordinarily, when a witness is asked to *identify* the assailant, or thief, or other person who is the subject of his testimony, the witness' act of pointing out the accused (or other person), then and there in the courtroom, is of little testimonial force. After all that has intervened, it would seldom happen that the witness would not have come to believe in the person's identity. The failure to recognize would tell for the accused; but the affirmative recognition might mean little against him.

"The psychology of the situation is practically the same as when Recent Contrivance is alleged. To corroborate the witness, therefore, it is entirely proper * * * to prove that *at a former time,* when the suggestions of others could not have intervened to create a fancied recognition in the witness' mind, he recognized and declared the present accused to be the person. If, moreover, (as sometimes is done) the person was then so placed among others that all probability of suggestion * * * is still further removed, the evidence becomes stronger. The typical illustration is that of the identification of an accused person at the time of arrest."

The rule above quoted was applied in *People v. Londe,* 230 Mich. 484, 203 N.W. 93, in which case the Supreme Court of Michigan said:

"The third question presented by the record relates to the ruling of the court in permitting witnesses Mrs.

Evans and John Kay to testify that they identified the defendant in the show-up room at police headquarters, and in permitting John Donovan, a police officer, to testify as to what took place at the time of the identification. It was proper for the witnesses who had seen the men at the time of the robbery to testify that they later identified the defendant as one of them. And it was equally proper for the officer to testify under what circumstances the identification was made. That is as far as the witnesses were allowed to go in giving their testimony. Counsel's objection is without merit. It does not require further discussion."

See, also, *People v. Slobodion,* 31 Calif. (2d) 555, 191 P. (2d) 1, and *State v. Wilson,* 38 Wash. (2d) 593, 231 P. (2d) 288.

*Second: Was there sufficient evidence to warrant submission to the jury of the question as to whether defendant was the driver of the automobile which ran over the child?*

This question is answered in the affirmative. There is no serious contention by counsel for plaintiff that the 1941 Buick automobile, painted a two-tone green with a radio aerial on the left rear fender, was not the automobile which struck the daughter of plaintiff. An eyewitness to the accident took the license number of the car as it continued on its way. The unusual features with relation to the radio aerial on the left rear fender, together with the color and make of the car as observed by witnesses, established beyond doubt the identity of the car. In addition to this, there is testimony that a fiber, identified as rabbit hair, was found in the mechanism of the "knee action" on the lower front part of the car, which corresponded with fur trim on part of the clothing worn by the deceased child; fresh markings or scrapings on the bottom of the splash pan of the automobile were plainly visible; and there were other telltale evidences of very recent forceful impact upon the car. All of the testimony points inescapably to the conclusion

that defendant's automobile was the car involved in the accident.

It is forcefully argued that there is no identification of defendant as the driver of the car, and it is true that no witness was able to identify him as the man at the wheel at the moment the child was struck. As hereinabove stated, the accident occurred at about 6:45 P.M. There is evidence that at about 6:30 P.M. defendant drove his car into a "drive-in" two blocks north of the scene of the accident; that he ordered some beer, and drank it; that he was alone in the car; and that after "ten or fifteen" minutes the car and defendant were gone. The car that killed the child was being driven south on Downing street. There also is testimony to the effect that the driver of the car at the time of the impact was a negro. Defendant is a member of that race. He denied being in the car at the time in question. He claimed that before the accident could have happened he had parked his car some distance from the scene while he visited certain taverns, and that at a time long after the child had been killed he returned to the place where his car had been parked and found it just as he had left it. There was other evidence, however, which established the fact that defendant's automobile had been moved between 6:00 o'clock P.M. and 8:00 o'clock P.M., and the conclusion is inescapable that it was defendant who drove the car, since he had no difficulty in going directly to the place where it was parked the last time. The foregoing, not to mention other circumstances shown by the evidence, was sufficient to support the finding of the jury that defendant was the driver of the automobile involved in the accident.

Third: *Was there sufficient evidence, tending to establish the fact that defendant was under the influence of intoxicating liquor, to justify the trial court's instructions upon that subject?*

This question is answered in the affirmative. Instructions nine and ten correctly stated the law with

reference to the subject of driving an automobile while under the influence of intoxicating liquor, and no objection was made to those instructions on the ground that the law was not correctly stated therein. The objection was to the effect that there was not sufficient evidence tending to prove that the defendant was under the influence of intoxicating liquor. We cannot agree with this contention. The record in this case shows that defendant admits that he began drinking beer at 11:30 A.M. on the day of the accident, at which time he drank two cans of beers at the home of Charlesetta Walker; that after driving around the city looking for an apartment he drank two more cans of beer at about 2:30 P.M.; that at 6:15 P.M. he drank four bottles of beer at the "715 Club"; and immediately thereafter drank two glasses of beer at the nearby Arcade Club. He further admits that the four bottles of beer consumed at the "715 Club" and the two glasses he drank at the Arcade Club were consumed within a period of "twenty-five or thirty minutes," and that the first of these was taken within thirty to forty-five minutes of the time of the accident. The witness Martin testified that she served defendant still another beer at the drive-in, and there is evidence that at about five o'clock in the afternoon, before going to the above drinking places, defendant returned to Miss Walker's apartment bringing with him six cans of beer.

Under these circumstances, most of which is admitted by defendant, there was no error committed by the trial court in instructing the jury upon the pertinent ordinance of the City and County of Denver, nor in defining what the law requires before a person can be considered to be "under the influence of intoxicating liquor."

█ Under the state of the record in this case, and in the light of defendant's admissions with respect to his drinking, the jurors, as reasonable men and women, were entitled, in the light of their experiences, to consider the effect, if any, which the consumption of beer by defendant shortly prior to the accident would have upon his

ability to drive an automobile. As this Court stated in *Snyder v. City and County of Denver*, 123 Colo. 222, 227 P. (2d) 341, if by the consumption of intoxicants the defendant was "less able, either mentally or physically or both, to exercise a clear judgment and with steady hands and nerves operate an automobile with safety to himself and to the public, * * *," he is under the influence of intoxicating liquor. The question as to the intoxication of defendant was properly submitted to the jury.

Fourth: *Was the verdict of the jury so excessive as to require reversal of the judgment entered thereon?*

This question is answered in the negative. The Colorado legislature has seen fit to authorize an award of damages not to exceed $10,000.00 in wrongful death cases. This Court, in the case of *Colorado Springs and Interurban Railroad Co. v. Kelley*, 65 Colo. 246, 176 Pac. 307, said, inter alia:

"As relates to the contention of excessive damage, we must bear in mind and be governed by the rule laid down by Chancellor Kent more than a century since, and generally adhered to by all courts, and by this court; that it is exclusively the province of the jury to estimate and assess the damages, and that the amount to be allowed in such cases, rests largely in their sound discretion. He said:

" 'The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partially [partiality] or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say, that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury and not the judgment of the court, which is to

assess the damages in actions for personal torts and injuries.' "

In the more recent case of *McEntyre v. Jones,* 128 Colo. 461, 263 P. (2d) 313, we upheld a judgment of $7500.00 for the wrongful death of a thirteen-year-old girl, against the argument that the judgment was excessive. In that case we said, inter alia:

"We believe the verdict is amply supported by the evidence and not excessive when considered in the following light, 'As a matter of sentiment, life has no pecuniary value, but considered with reference to the relations of deceased with others, it is capable of such estimate. In this sense a parent is entitled to the services of children during their minority, and to support and maintenance from them in his declining years.' "

The above quoted language is applicable with equal force, under the facts in the instant case. The judgment is affirmed.

MR. JUSTICE HOLLAND, MR. JUSTICE KNAUSS and MR. JUSTICE BRADFIELD dissent.

MR. JUSTICE HOLLAND dissenting:

The majority opinion in this case adds to the static already existing in the opinions of our Court when the matter of a death is attributed to the operation by a person of an automobile while under the influence of intoxicating liquor. In addition to this situation this Court should not vary from case to case in its position taken so many times to the effect that judgments must rest on firmer ground than that of speculation, and there can be no dispute of the fact in the instant case that the only evidence upon which a verdict or judgment could rest is the weakest of circumstantial evidence and the jury had to indulge in assumptions outside the record to reach the verdict of which complaint is here made.

In the majority opinion it is correctly stated that no witness was able to identify defendant as the man at the

wheel of the car at the moment the child was struck. The fact is, no witness even attempted to make any such identification, and the only thing identified was that the car involved was of the description of defendant's automobile. If the jury was correct in assuming that defendant's automobile was the only one of that description in all of the thousands of cars on the streets, then there could be no question about the matter of defendant's automobile being involved in the accident. More than that, defendant is not the only colored person owning or driving an automobile. The missing link, which should defeat the judgment in this case, is that it was not established beyond guesswork that defendant was driving the car, even if it was his automobile that was involved.

Regardless of the amount or amounts of beer defendant had consumed during the evening, there is not one whisper in the testimony to the effect that he was under the influence of liquor, much less intoxicated. He vehemently denies driving his automobile at the time and place in question. If he was not driving the car, then it makes no difference about his "spiritual" condition; however, in that regard, "one man's meat is another man's poison." Therefore, we have two vital and essential elements missing, which, if attempted to be supplied by circumstance, must result in speculation, and the assumption of facts not disclosed on the face of the record. We must not overlook the fact that it is easy for a jury, when a death is involved, to have prejudice aroused when liquor is mentioned, and more particularly with some jurors if the defendant is of a different race or color to that of the juror.

The instructions of which complaint is made, unquestionably state the law to be applied in proper cases; however, a correct statement of the law is sometimes prejudicial to a defendant if the circumstances do not warrant the giving of the instruction. It must be remembered that jurors look upon and consider instructions as the

voice of the court. The instructions given in the instant case, of which complaint is made, are as follows:

"Instruction No. 9

"The Court instructs the jury that Section 56 (a) of the Ordinances of the City and County of Denver (Ordinance No. 31, Series of 1950) provides as follows:

" 'It is unlawful for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle or street car within the city.' "

"Instruction No. 10

"The Court instructs the jury that a person is under the influence of intoxicating liquor as that phrase is used in the ordinances, upon which I have instructed you, when he has taken a drink of alcoholic liquor which affects him so that in the slightest degree he is less able, either mentally or physically, or both, to exercise a clear judgment, and with steady hands and nerves, operate an automobile with safety to himself and to the public, and when this physical and mental condition exists after imbibing intoxicating liquors, even though the person has had one drink thereof, he is under the influence of intoxicating liquor."

In view of what we have herein observed concerning lack of evidence of intoxication; then even if defendant was driving the car, the giving of these instructions was error, because they were not based on the evidence, but presented what the jurors could easily feel that in the mind of the court such a condition existed. Our Court of Appeals in an earlier case, which never has been questioned, modified, or overruled, aptly expressed the law on this particular topic in the case of *Fisk v. Greeley Electric Light Co.*, 3 Colo. App. 319, in the following language:

"The instructions should in all cases be based upon the evidence, and an instruction, no matter how correct the principle which it may announce, that impliedly assumes the existence of evidence which was not given, is

erroneous. It is calculated to bewilder and mislead the jury by producing the impression that in the mind of the court, some such state of facts as the instruction supposes, may be inferred from the evidence given, or concealed within it."

It is my firm conviction that the judgment herein should be reversed and the cause remanded with directions for a new trial, and that consideration be given to the views herein expressed.