## No. 19,664.

VAN W. KOGUL, ET AL., *v.* F. J. SONHEIM, ET AL.
(372 P. [2d] 731)

Decided June 18, 1962.   Rehearing denied July 9, 1962.

Messrs. DAWKINS & BERMAN, for plaintiffs in error.

Messrs. WOOD, RIS & HAMES, Mr. STEPHEN E. CONNER, for defendants in error.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

.This is a wrongful death action under C.R.S. '53, 41-1-1 et seq. (as amended), brought by the parents of a three year old child. The parties appear here in the same order as in the trial court and will be referred to accordingly. The only issues in the case concern the proper amount and measure of damages.

Defendants, husband and wife and their twenty-four year old daughter, owned and possessed property located at 2901 South Corona Street in Englewood, Colorado. On August 3, 1959, defendant Mr. Sonheim brought from work an electric spot welder weighing approximately 240 pounds and temporarily stored it in his backyard near a fence adjoining a sidewalk. On August 4, 1959, at approximately 10:30 A.M. the decedent child was found dead beneath the spot welder, the cause of death being a cracked skull and multiple internal injuries suffered as a result of the spot welder falling on him. Plaintiffs, the parents of the child, then sued defendants for $25,000.00 for the negligent death of their child on the theory of attractive nuisance. Defendants denied negligence and alleged unavoidable accident. Following the introduction of evidence the court dismissed the action against the defendant's wife and daughter. The jury returned a verdict in favor of plaintiffs against the defendant husband for $700.00, upon which judgment was entered. Motion for a new trial was dispensed with.

Upon submitting the case the court instructed the jury to the effect that if it found for plaintiffs, the damages must be limited to the net pecuniary loss sustained by plaintiffs by reason of the child's death. The court then instructed that "the net pecuniary or monetary loss, if any, sustained by the plaintiffs by reason of the loss of their son is equivalent to the pecuniary or monetary benefits, if any, which the plaintiffs might reasonably have expected to receive from the continuation of his

life less the cost of properly and suitably maintaining and educating him." Plaintiffs excepted to this instruction and tendered an alternative instruction which was refused.

By writ of error plaintiffs seek a new trial solely on the issue of damages. They urge that: (1) the damages awarded by the jury were grossly and manifestly inadequate; and (2) in wrongful death actions of this type the measure of damages should not be the net pecuniary loss sustained by the parents but rather the replacement value of the child as measured by the cost of infantile hospitalization and care, clothing, support and education up to the time of the child's death.

Plaintiffs must fail on both grounds. While we recognize that money damages in any amount can never compensate bereaved parents for the loss of a child, yet we must adhere to the rule that parental grief is not an element of damages in wrongful death actions under the statute. *E. G. Pierce v. Conners,* 20 Colo. 178, 37 Pac. 721 (1894). The jury in this case had the benefit of extensive testimony and evidence, and it was its peculiar province to estimate and assess the damages. *E. G. Colorado Springs and Interurban Railroad Company v. Kelley,* 65 Colo. 246, 176 Pac. 307 (1918); *Lehrer v. Lorenzen, et al.,* 124 Colo. 17, 233 P. (2d) 382 (1951). In *Lehrer,* supra, we expressly set forth the standard for setting aside a money verdict on grounds of inadequacy in the following language:

"* * * [W]e hold it to be an abuse of discretion on the part of the court to set aside the verdict of the jury and grant a new trial solely on the ground of inadequacy of the verdict unless, under the evidence, it can be definitely said that the verdict is grossly and manifestly inadequate, or unless the amount thereof is so small as to clearly and definitely indicate that the jury neglected to take into consideration evidence of pecuniary loss or were influenced either by prejudice, passion or other improper considerations." 124 Colo. at 20-21.

We find nothing in this record to justify setting aside the verdict here on any of these grounds.

■ Since the case of *Pierce,* supra, this court has continually adhered to the net pecuniary loss rule in determining the amount of damages in wrongful death cases. Any change in the law as to the measure of damages allowed for the wrongful death of a child in our view should only come by proper legislative action and not through judicial legislation. In spite of at least two courts in other jurisdictions having discarded this theory in recent times [e.g. *Wycko v. Gnodtke,* 361 Mich. 331, 105 N.W. (2d) 118, (1960) and *Fussner v. Andert,* Minn., December 15, 1961, 113 N.W. (2d) 355] we have but recently approved both the rule and the *Pierce* case in *Herbertson v. Russell,* 150 Colo. 110, 371 P. (2d) 422, and no good purpose would be served by an extended discussion here.

The judgment is accordingly affirmed.

MR. JUSTICE MOORE specially concurs.

MR. JUSTICE FRANTZ and MR. JUSTICE HALL dissent.

MR. JUSTICE MOORE specially concurring:

Arguments advanced by counsel for plaintiff in error and comments in the dissenting opinion of Mr. Justice Frantz constrain me to file this specially concurring opinion.

It is freely admitted that by numerous opinions of this Court in this jurisdiction, it has been firmly established that net pecuniary loss is the measure of damages in an action for wrongful death. Such action may be brought only by those persons upon whom the right has been conferred by statute.

It is asserted that this rule is "discordant with the word and spirit of the Constitution of this state." Article II, Sec. 3, of that instrument is the only provision mentioned which, it is asserted, should impel us to repudiate

the many opinions of this Court which have announced the rule. An examination of this constitutional provision will very quickly expose the fallacy of the argument. It provides in pertinent part that:

"All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending *their* lives and liberties \* \* \*." (Emphasis supplied.)

Constitutional guarantees have never operated to confer upon any person a claimed "right" which has never been recognized under any concept of law. The above-quoted language does not give a constitutional right to such person to "enjoy" the life of another. By the express provisions of the constitution the right of "enjoying and defending *their* lives and liberties" is the constitutionally protected right of the individual whose own life and liberty is involved.

The foundation of the "right" to bring an action for damages for the wrongful death of another is laid in the statute (C.R.S. '53, 41-1-2). Prior to its adoption such "right" was nonexistent. Under this statute it has consistently been held that the measure of damages is the reasonably expected net pecuniary benefit to the prescribed survivors had the deceased lived, "but not a solatium for grief of the living." An early case upholding this rule was announced in 1894, namely, *Pierce v. Conners,* 20 Colo. 178, 37 Pac. 721. This rule has been adhered to by this Court in numerous cases for over sixty-five years. Recent decisions are *Rigot v. Conda,* 134 Colo. 375, 304 P. (2d) 629; *Lehrer v. Lorenzen, et al.,* 124 Colo. 17, 233 P. (2d) 382; and *Bates v. Ward,* 142 Colo. 125, 349 P. (2d) 991. In the *Bates* case Mr. Justice Frantz concurred in upholding the "net pecuniary loss" rule.

On several occasions since the original statute was interpreted by this court to limit recovery to "net pecuniary loss" the statute has been amended by legislative action. But the rule of "net pecuniary loss" as the measure of damages has not been changed although sev-

eral attempts to accomplish that result have failed in the General Assembly.

The reference to Article II, Section 3 of the constitution has no pertinence to the issues. Other sections of the constitution are clearly applicable. They are basic and fundamental. Article III thereof divides governmental power into three departments and admonishes each that no "* * * persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, * * *."

This Court is frequently called upon to curb and invalidate the actions of officials who purport to act in a manner beyond the powers which they possess under the constitution and the limitations imposed upon their authority. We should be equally willing to give recognition to, and obey, the mandates of the constitution which place definite limitations upon the power of the judiciary. As stated by Mr. Justice Sutton in the opinion of the Court, such a radical change in the long-established construction of this statute is a matter for consideration by the legislature. To accomplish that result by judicial fiat, as I view the matter, would be a repudiation of one of the most basic concepts of our way of life, and would amount to a declaration that the judiciary recognizes no limitations upon its power to change the law to correspond to what the individual members of the Court may, from time to time, believe the law should be. If, upon every change in the personnel of this Court, we were to bend or reshape the law to conform to the philosophical views of the judges who currently occupy the bench, we would destroy all semblance of legal stability and be open to the criticism expressed by Mr. Justice Jackson of the United States Supreme Court when he said in *Brown v. Allen,* 344 U. S. 443 (at 535):

"Whatever has been intended, this court also has generated an impression in much of the judiciary that regard for precedents and authorities is obsolete, that

words no longer mean what they have always meant to the profession, that the law knows no fixed principles."

There is yet another provision of the constitution which requires us to follow the well-established precedents pertinent to the question under discussion. Article II, Section 11, provides in pertinent part that no law "* * * retrospective in its operation, * * * shall be passed by the general assembly." At the time the acts of the defendant were committed, which gave rise to the wrongful death action under the statute, the law as then proclaimed throughout the state placed the limit of liability to "pecuniary loss." To retrospectively enlarge this limited liability by judicial invasion of the legislative function would be to approve acts done in excess of jurisdiction, which could not be upheld if enacted by those whose exclusive function it is to legislate. If the General Assembly were to enlarge liability and attempt to give it "retrospective" effect, such result could not be upheld by this Court. Yet the contention seems to be that this court, by indulging in legislative activity which the constitution enjoins, can nevertheless produce a result which the legislature itself could not accomplish. This is a dangerous doctrine. The separation of powers of government is the keystone of our system. The judiciary should be the very first to give full effect to constitutional limitations upon its own power.

The Constitution of Colorado, in no uncertain terms, prescribes the duty of the jurist confronted with the existence of a well-established rule of law which he believes to be unjust or subject to amendment. Article VI, Section 27, provides in pertinent part that, "* * * the judges of the supreme court shall, on or before the first day of December of each year, report in writing to the governor, to be by him transmitted to the general assembly, together with his message, such defects and omissions in the constitution and laws as they may find to exist, together with appropriate bills for curing the same." If the provision on separation of powers needed

any clarification, which it does not, the foregoing direction to judges concerning their constitutional duties should leave nothing to be desired.

There can be no equal justice under law unless the law has stability. Numerous persons have been limited to damages for "pecuniary loss" resulting from wrongful death. In the absence of legislative action which acts prospectively, I can have no part in creating inequality of treatment under a single statute, making "fish" out of all plaintiffs whose cases have already been determined, and "fowl" out of the plaintiff who persuades the judiciary to amend the law to provide a more favorable result than would otherwise apply to him.

The foregoing is also applicable to the views expressed in the specially concurring opinion of Mr. Justice Frantz in *Herbertson v. Russell*, 150 Colo. 110, 372 P. (2d) 422.

MR. JUSTICE FRANTZ dissenting:

In a specially concurring opinion in *Herbertson v. Russell*, No. 19,691 (decided May 7, 1962), I expressed concepts concerning the wrongful death statute differing from those espoused by the majority in that case. Consistent with my previously stated concepts, entertaining them as I still do, I am opposed to the prevailing opinion in this case.

My arraignment of the net pecuniary loss dogma applied in the Herbertson case takes on a sharper delineation by reason of the majority opinion in the present case. The verdict awarding $700.00 (representing funeral expenses and less than $100.00 for other damage), upon which judgment was entered, is a paltry sum to equate for the life of a four-year-old healthy boy.

For us to sanction a judgment in this amount on the theory that only net pecuniary loss represents the measure of damages where the boy's death resulted from fault is to defer to an essentially materialistic tenet dis-

cordant with the word and spirit of the Constitution of this state. Materialism and our Bill of Rights are intrinsically antagonistic.

I cannot believe that the "natural, essential and inalienable" right to enjoy life, given measured recognition in the Bill of Rights (Art. II, Sec. 3, Const. Colo.) is, in this case, just a beautiful aspiration and nothing more. Yet that is the effect of the majority opinion. For all that remains, at most, is the moral right to enjoy life; the right recognized by law — indeed, guaranteed by the Constitution — is little more than nothing in a juridical sense.

I would have this constitutional provision be more than "sonority without content," more than "sounding brass," more than the subject of patriotic orations. It is our solemn duty to give these words of the Bill of Rights their mandatory meaning and not reduce them to a hortatory significance.

The "right" to enjoy life envisages "duty" as its correlative. A right without a corresponding duty is semantic emasculation. A legal right with only a corresponding moral duty is jurisprudentially a solecism. A right in law loses its true traditional dimension when not complemented by a duty in law. Neither can stand alone and free of the other without rendering both meaningless.

An award of funeral expenses plus something less than $100.00 for the life of the Kogul child just about makes "duty" a moral compulsion only, if the majority opinion in a practical sense means anything. Such results from an adherence to stare decisis. When it is made to appear that stare decisis produces an unhappy application and also runs contra to a constitutional mandate, the time is auspicious for a change in concepts.

Other courts in recent times have been vexed with the same problem. Some have refused to kowtow to stare decisis on less tenable grounds than I propose. Indeed, these courts have re-interpreted their wrongful death

statutes, and in so doing have expanded the measure of damages beyond net pecuniary loss, to permit recovery for loss of the comfort, society, assistance and protection of the deceased. *Wycko v. Gnodtke,* 361 Mich. 331, 105 N.W. (2d) 118 (1960); *Fussner v. Ardert,* 261 Minn. 347, 113 N.W. (2d) 355 (1961). See *Holder v. Key System,* 88 Cal. App. (2d) 925, 200 P. (2d) 98.

It will be the rare exception when net pecuniary loss as a measure of damages does not imply wage-earning. Related to a baby or a child of tender years, who has lost his life through the intentional or negligent act of another, net pecuniary loss has little or no relevance except the courts wink at the fiction that juries through some occult power are able to project their minds into the future and say that this child will and that child will not be a wage earner. In other circumstances we would unhestitatingly label such damages, founded upon such assumed prophetic powers, imaginary and speculative. It is urged that we abandon the fiction and adopt a realistic standard.

This case affords a felicitous occasion for discarding a harsh rule and giving, at the same time, due recognition to one of the most sacred and precious of all admitted natural rights: the right to life. A *right* to life, a *duty* to respect and honor that right: this is the ultimate, fundamental principle of a republican form of government in which the dignity of man is acknowledged and protected.

Whatever else I would say would be only a restatement of views presented in my concurring opinion in the Herbertson case. Those views, I submit, have equal validity to this case, and I would have them apply here.