George P. GLASSCOCK,
Plaintiff-Appellant,

v.

Bradley A. MILLER,
Defendant-Respondent.

No. 14329.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 26, 1986.

Kenneth G. Gibbar, Cape Girardeau, for plaintiff-appellant.

David M. Remley, Donald L. Dickerson, Thomasson, Dickerson, Gilbert & Cook, Cape Girardeau, for defendant-respondent.

HOGAN, Presiding Judge.

This case, a wrongful death action, arose out of an automobile accident which occurred on August 3, 1983, on Interstate Highway 70 near Arriba, Colorado. Kenneth Glasscock, 20 years of age, was killed in the accident. Defendant Miller, who

was driving the vehicle, was injured. This action was instituted in the Circuit Court of Scott County on March 2, 1984. Upon trial to a jury the defendant had a verdict and plaintiff, the decedent's natural father, now appeals.

The occupants of the vehicle were members of a senior "Babe Ruth" baseball team called the SEMO North baseball team. The team was composed of players from Jackson, Chaffee, Scott City, Cape Girardeau and other nearby communities. In the summer of 1983, the team had won the local regional tournaments, the state championship game and was entitled to participate in a national regional play-off at Delta, Colorado. The members of the team wanted to participate, but because they had a long trip to make in a short time, they took a vote to decide whether to drive or to fly. Some members of the team wanted to fly; others "wanted to go in vans." Vehicles were provided for the group which was interested in driving. The decedent was not a member of the team, but he was acquainted with one or more of the players. He was interested in seeing Colorado, because as defendant put it, "[none of us] had [ever] been there before, and our coach said it was pretty." It was agreeable to the coach to have Glasscock accompany the team if he obtained permission from his parents. This permission was obtained from a member of the decedent's family.

It is not quite clear from the record whether the group which decided to drive rode in two vans or a van and an automobile, but in any case the motorists met at Scott City, Missouri, about 6 p.m. on August 2. The vehicles traveled in convoy. The motorists drove across Missouri and Kansas during the night and reached the city of Scott City, Colorado, about 6:30 a.m. the next morning. They stopped at a restaurant, and the defendant, having slept well during the night, agreed to drive the rear vehicle, a 1979 Chevrolet van. When the group left Scott City, Colorado, there were five young men in the rear van. The defendant was driving; the decedent was sitting in the "passenger's" seat beside the defendant. Two other young men were

sitting behind the defendant and Glasscock, and the team's coach, Jim Noon, was attempting to sleep at the rear of the van. Defendant's counsel repeatedly brought out that none of the occupants of the van used seat belts at any time.

After the defendant had been driving about 30 to 45 minutes, "averaging around 60 miles an hour," both he and Glasscock saw two coyotes along the side of the road. Defendant "hollered" about the coyotes, and Glasscock said "Hey, look at those coyotes." The defendant's account of the events which followed—which we quote only because it was the most lucid account given—was that he was driving along on a "[f]airly level stretch of road":

"I was driving along and all of a sudden I looked up and two coyotes jumped, they were off to the side, we were all looking to the side. And I hollered and, you know, Ken was saying 'Hey, look at those coyotes,' and Tim [another team member who had just awakened] jumped up and looked out the side and I looked back up just a split second after that and I seen this reflector pole coming right at me. And I turned, and I just didn't—the van didn't have no response, just wouldn't communicate with me.

\*   \*   \*   \*   \*   \*

Q.   ... You referred to a reflector pole or a marker of some kind—

A.   Yes, sir.

Q.   Was that off on the right part of the grassy shoulder there?

A.   Yes, sir.

\*   \*   \*   \*   \*   \*

Q.   But your recollection is that you glanced off for just an instance [sic] to the coyotes, you looked back, and had the van strayed off towards the shoulder?

A.   Yes, sir.

Q.   And you saw the reflector?

A.   Yes, sir.

Q.   Now, what did you do?

A.   I tried, to the best of my capability, to turn the van back onto the road.

Q. And you indicated you had trouble getting it to respond?

A. Yes, sir.

Q. Now, can you tell us what happened next?

A. I don't remember nothing after that, sir."

\*　　\*　　\*　　\*　　\*　　\*

Otherwise, the record indicates that when the defendant turned the van to avoid the reflector pole, the van overturned, or "rolled." Three of the passengers were thrown out of the van, and both the defendant and the decedent were pinned under the vehicle. Glasscock lived only a few minutes. There was some evidence—from Coach Noon—that the shoulder of the road was very narrow, and the edge of the shoulder was marked by reflector poles. Upon this evidence, the cause was submitted to the jury upon the defendant's failure to keep a lookout. As noted, the jury found for the defendant.

■ In this court, the plaintiff has made three assignments of error. His first assignment, elaborately stated, is that the trial court erred in failing to grant him a new trial because the jury's verdict was against the law and the evidence in that the defendant was guilty of negligence as a matter of law. It has been the law of this State for many years that when the trial court has refused a motion for new trial, an assignment of error that the verdict is "against the weight of the evidence" or is "against the law under the evidence" is insufficient to preserve any question for review on appeal. *Clay v. Owen*, 338 Mo. 1061, 1064, 93 S.W.2d 914, 915[1][2] (1936); *Boswell v. Saunders*, 224 S.W.2d 125, 128[1] (Mo.App.1949); *Hooper v. Wineland*, 131 S.W.2d 232, 240–41 (Mo.App. 1939). If the assignment is meant to be an assignment that the verdict is against the weight of the evidence, then the allegation presents a question which is for the trial court alone. An appellate court does not weigh the evidence; it is only when there is a complete absence of probative fact to support a verdict that an appellate court

will interfere. *Stevens v. Wetterau Foods, Inc.*, 501 S.W.2d 494, 496 (Mo.App.1973).

■ Plaintiff also seems to be contending that the defendant was guilty of negligence as a matter of law. This is tantamount to saying that plaintiff was entitled to a directed verdict. It is a general rule of appellate practice that an appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982), appeal dismissed 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983). An adjunctive rule is that on this appeal, the plaintiff having never moved the trial court for a directed verdict, is precluded from contending that he was entitled to recover as a matter of law. *Parsons Construction Co. v. Missouri Public Service Co.*, 425 S.W.2d 166, 171[1, 2] (Mo.1968); *Stanziale v. Musick*, 370 S.W.2d 261, 266[7] (Mo. 1963). See also *Crystal Tire Co. v. Home Service Oil Co.*, 525 S.W.2d 317, 320–321 (Mo. banc 1975), holding the same rule to be applicable to cross-claims. We may say that we have examined the record and the evidence on the sole ground submitted, and had the point been properly preserved, we would be obliged to rule it against the plaintiff.

In his second point, the plaintiff contends that the trial court erred and deprived itself of jurisdiction by refusing to apply the Colorado wrongful death statute, C.R.S. '73 § 13–21–202, as well as the Colorado "rules of the road" and the standard of care required by those rules.

The action was commenced on March 2, 1984. On May 17, 1985, by leave of court, the plaintiff filed a first amended petition, averring: 1) that defendant's negligence caused the van to roll; 2) that the defendant's negligence caused the decedent's death; 3) that both the tort and the death occurred in Colorado, and 4) that "a legal and statutory action [had] accrued to him under the laws and statutes of Missouri and Colorado by the death of his son caused by the aforesaid negligence of the Defendant." The defendant, in his respon-

sive pleading, alleged among other things that "this action is controlled and governed solely by the laws of the State of Colorado, with all defenses, actions and limitations contained thereon."

The parties argued the choice-of-law question at a pretrial conference. The trial court firmly closed its mind to any application of Colorado law. In part, the court stated:

"I would get more complicated than ever by taking a piece of their law and a piece of our law. I believe the interest here is Missouri interest. I believe both parties are citizens of this state. They are in a Missouri car, Missouri license, assuming bought their insurance, if they have it, in Missouri. I see no law in Colorado that would be significant [enough] to warrant changing any approach I would take to the case.

One of the reasons I am giving you so much, I think I would booger you up if I take a piece of it. If I am wrong, they will pop me and you will be saved and you will have a good, clean appeal point."

■ Preliminarily, we reject the notion that an incorrect choice-of-law ruling deprives the trial court of jurisdiction. Some of the older cases held, or seemed to hold, that unless a plaintiff seeking recovery under a foreign wrongful death act did not at least plead the foreign statute, no cause of action was stated. *Rositzky v. Rositzky*, 329 Mo. 662, 671, 46 S.W.2d 591, 595 (1931); *Nelson v. Hall*, 684 S.W.2d 350, 357 (Mo. App.1984). This is no longer the law. In contemporary practice a court takes judicial notice of a foreign statute when the pleading avers that the law of another state is relied on or contains allegations which show that the law of another state must be applied. Rule 55.21(b); *Robinson v. Gaines*, 331 S.W.2d 653, 655[2–4] (Mo. 1960); *Nelson v. Hall*, 684 S.W.2d at 357–58. What is before us is a question of error, not jurisdiction.

■ In *Nelson v. Hall*, 684 S.W.2d at 356, the court held that in wrongful death actions:

"The text, comments and notes in the Restatement (Second) §§ 145, 146 and 175 and several others—as our discussion shows—impress the general rule, *subject only to rare exceptions,* the local law of the state where conduct and injury occur will apply to determine 'whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection.' Comment d to § 145. The Restatement (Second) does allow for exception—as it must, if the accommodation of multistate interests in conflict is to be principled. (Citation omitted)...."

The court went on to say:

"The plaintiffs plead that the child was killed as the result of negligent operation by the defendant of his motor vehicle on the Colorado highway. Whether that conduct was tortious—in the absence of an exceptional circumstance—depends upon whether the defendant failed to meet the standard of care imposed by Colorado. *Kennedy v. Dixon,* supra [439 S.W.2d 173 (Mo. banc 1969)], l.c. 182; *Griggs v. Riley,* supra [489 S.W.2d 469 (Mo.App.1972)], l.c. 471[1]; Restatement (Second) § 145 comment d; § 146, Reporter's Note, comment d; § 175, Reporter's Note (1971). The plaintiffs neither plead, nor argue, nor assert, nor even intimate any circumstance which invokes a governmental interest of Missouri so cogent as to entitle its law to supervene that of Colorado to determine whether a cause of action for wrongful death occurred on account of the highway conduct."

*Id.* at 360. We should note, also, that the court recognized that an action for wrongful death necessarily raises several issues, and fully recognized that the Restatement (Second) approach to choices of law—to which we are committed by *Kennedy v. Dixon,* 439 S.W.2d 173, 180–84 (Mo. banc 1969)—does not require that *all* issues in a particular case be controlled by the law of

the same state.[1] So, the court went on to hold:

> "The petition, therefore, states a cause of action for wrongful death under the Colorado statute, and the dismissal was erroneous. That dismissal without prejudice is set aside, and the petition is reinstated.
>
> *On remand, the plaintiffs may amend the pleading to assert that as to any particular issue—such as damages, or other—the state of Missouri enjoys the most significant contacts and relationship with the occurrence and the parties and therefore should determine that issue....*" (Our emphasis.)

*Nelson v. Hall,* 684 S.W.2d at 360–61.

Three potential areas of "true" conflict may be identified in this case: 1) whether the defendant's negligence should have been determined according to Missouri or Colorado law; 2) whether the decedent's contributory fault should have been gauged by Missouri or Colorado law, and 3) whether the amount of damages plaintiff could recover should have been governed by Missouri or Colorado law. As to the defendant's breach of duty (negligence) there may be a true conflict, which we shall discuss presently. As to the matter of decedent's contributory fault, there may also be a true conflict between Colorado's modified comparative negligence statute, C.R.S. § 13–21–111 (1973, Cum.Supp.1984), which bars recovery if plaintiff's contributory negligence is greater than 50 percent, and the comparative fault principle adopted in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), which we now know is a pure comparative fault statute. *Cornell v. Texaco, Inc.,* 712 S.W.2d 680, 682 (Mo. banc 1986). As our discussion will show,

we need not and do not decide that question. As to the issue of damages, we find a true conflict. In Colorado, damages for wrongful death in the circumstances here present are limited to $45,000, 13 C.R.S. '73 13–21–203, while § 537.090, RSMo Supp. 1984, although it sets forth the elements of damages, does not limit the amount recoverable. As the question of damages was never reached by the jury, we need not consider the effect of any erroneous choice of law.

As we have said, the question of an erroneous choice of law is presented as a matter of error, and although *Nelson* clearly holds the question of defendant's liability should have been submitted under Colorado law, nevertheless the dispositive question is whether that error was prejudicial to the plaintiff. No principle of law is more firmly established than the rule that error without prejudice to the complaining party is no ground for reversal. Rule 84.13(b); *Neavill v. Klemp,* 427 S.W.2d 446, 448[9] (Mo.1968); *Wilcox v. St. Louis-Southwestern Railroad Company,* 418 S.W.2d 15, 19–20[3] (Mo.1967); *Pratt v. Cudworth,* 637 S.W.2d 720, 724 (Mo.App.1982); *Kennedy v. Tallent,* 492 S.W.2d 33, 39 (Mo. App.1973).

The instructions upon which the defendant's liability was submitted were Instructions No. 7 and 8. Instruction No. 7 was Missouri Approved Instruction No. 20.01, and read as follows:

> "Your verdict must be for plaintiff if you believe:
>
> First, plaintiff was the father of Kenneth Scott Glasscock, and
>
> Second, defendant failed to keep a careful lookout, and

---

1. This principle has been given a name—"dépecage"—and means, as Dean Leflar explains: "This refers to the process whereby different issues in a single case arising out of a single set of facts may be decided according to the laws of different states. This has always been the process when procedural matters were held to be governed by forum law and substantive questions by some other law, even when matters characterized as procedural had substantial outcome-determinative effect. It has always been understood also that different substantive issues could properly be decided under the laws of different states, when the choice-influencing considerations differ as they apply to the different issues." R.A. Leflar, American Conflicts Law, § 109, pp. 221–22 (3d ed. 1977). See also J. Westbrook, A Survey and Evaluation of Competing Choice-of-law Methodologies: The Case For Eclecticism, 40 Mo.L.Rev. 407, 464–66 (1975).

Third, defendant was thereby negligent, and

Fourth, as a direct result of such negligence, Kenneth Scott Glasscock died."

Instruction No. 8, which is Missouri Approved Jury Instruction No. 11.03, defined the terms "negligent" or "negligence" as follows:

"The term 'negligent' or 'negligence' as used in this instruction means the failure to use the highest degree of care. The phrase 'highest degree of care' means that degree of care that a very careful and prudent person would use under the same or similar circumstances."

Instruction No. 8 was manifestly sufficient to inform the jury, in light of the evidence, that the plaintiff had a cause of action and a right to recover damages under the law of Colorado. However, we have compared the "lookout" duty imposed by the law of Colorado, e.g., in *Behr v. McCoy*, 138 Colo. 137, 330 P.2d 535, 537–38 (banc 1958), with the "lookout" duty imposed by the law of Missouri, e.g., in *Jackson v. Skelly Oil Company*, 413 S.W.2d 239, 242–43 (Mo. banc 1967), and we conclude that the lookout duty in Missouri is appreciably more onerous than that imposed by Colorado. Moreover, Missouri law requires the operator of a motor vehicle to exercise the highest degree of care, § 304.010.1, RSMo Supp.1984, as the jury was advised by Instruction No. 8, whereas Colorado holds a motorist only to ordinary care, as demonstrated by Colorado Jury Instruction (2d ed.) No. 9:4, which reads as follows:

"Negligence means a failure to do an act which a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect (himself) (herself) (or) others from (bodily injury) (death) (property damage) (insert any other appropriate description, e.g., 'financial loss')."

We conclude that as to the issue of a breach of duty—"liability"—which was the focus of the opinion in *Nelson v. Hall*, 684

S.W.2d at 356, the plaintiff received the benefit of a submission more favorable than that to which he was entitled. If there was error in applying Missouri law, it was not prejudicial to the complaining party.

As noted, the choice-of-law ruling by the trial court might have posed difficulty if a non-MAI affirmative defense comparative fault instruction (similar to Instruction No. 7 considered in *Cornell v. Texaco, Inc.*, 712 S.W.2d at 682) had been given. However, no such instruction was given, and there was in fact no basis for submitting any sort of contributory negligence or fault in this case. The defendant repeatedly asked if any of the occupants of the van used their seat belts. The "seat belt" defense was not admissible in evidence to prove contributory negligence in either Colorado or Missouri at the time this accident occurred. *Churning v. Staples*, 628 P.2d 180, 181[3] (Colo.App.1981); *Miller v. Haynes*, 454 S.W.2d 293, 301[7] (Mo.App. 1970). No other sort of contributory negligence or fault was developed by the evidence. As to the measure of damages, Missouri Approved Instruction No. 5.01 was given, with the addition of the words "You must not consider grief or bereavement suffered by reason of the death." This modification was appropriate under the law of Colorado, *Kogul v. Sonheim*, 150 Colo. 316, 372 P.2d 731, 732[1] (banc 1962), as well as the law of Missouri. There was, in our opinion, no prejudice to the plaintiff, but we need not so rule, as the jury did not reach the question of damages. We find point two to be without merit.

In his third point, plaintiff contends that the trial court erred in not granting him a new trial based on "plain error" because the defendant's attorney misstated the law and made prejudicial and inflammatory comments during voir dire, in defendant's opening statement and in his closing argument. Plaintiff lists sixteen (16) separate statements or comments to which he objects. The statement (or misstatements) numbered 2 to 15 in the plaintiff's brief

were not objected to upon trial, and the remarks numbered 2 to 6, 9, and 13 to 15 were not specifically addressed in plaintiff's motion for new trial. Only statements 1 and 16 were timely objected to and assigned as error in the motion for new trial.

■ Generally, failure to object to an argument or statement at the time it is made to a jury results in a waiver of any right to complain to the argument or statement on appeal. *Mueller v. Storbakken*, 583 S.W.2d 179, 186[6] (Mo. banc 1979); *Blevins v. Cushman Motors*, 551 S.W.2d 602, 616[25] (Mo. banc 1977); *Moore v. Smith*, 657 S.W.2d 664, 667[4] (Mo.App. 1983). This is true even when the point is preserved in an after trial motion, *Hussey v. Kaiser*, 670 S.W.2d 208, 210[3] (Mo.App. 1984); *Wilborn v. Williams*, 555 S.W.2d 44, 46[4] (Mo.App.1977), because if objection is not timely made, the trial court has no opportunity to take corrective action. *Hensic v. Afshari Enterprises, Inc.*, 599 S.W.2d 522, 526[7, 8] (Mo.App.1980).

■ The only review of statements numbered 2 through 15 available to the plaintiff is review as plain error under Rule 84.13(c). It has been held that the "plain error" rule should not be invoked to excuse mere failure to object to argument a complaining party deems improper, but should only be invoked in circumstances which demonstrate manifest injustice or a miscarriage of justice. *Lawton v. Jewish Hospital of St. Louis*, 679 S.W.2d 370, 372[3, 4] (Mo. App.1984); *Hensic v. Afshari Enterprises, Inc.*, 599 S.W.2d at 525[4, 5]. Statements or misstatements 2 through 15 taken separately or as a whole did not work any manifest injustice to the plaintiff.

Statements number 1 and 16, which are properly before the court, fall within the rule that the regulation of argument is a matter largely within the discretion of the trial court, and it is the policy of the law to indulge a liberal attitude in ruling contentions relating to matters argued to the jury. *Beesley v. Howe*, 478 S.W.2d 649, 652–53 (Mo.1972); see also *Martin v. Sloan*, 377 S.W.2d 252, 259–60 (Mo.1964).

There was no abuse of discretion here, and point three is without merit. We find no error in any respect briefed or presented to this court. Accordingly, the judgment is affirmed.

PREWITT, C.J., and CROW and MAUS, JJ., concur.