STATE of Missouri,
Plaintiff–Respondent,

v.

Daniel M. MAHANY,
Defendant–Appellant.

No. 52604.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 16, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 23, 1988.

Application to Transfer Denied
May 17, 1988.

Stormy B. White, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Presiding Judge.

Defendant, Daniel Mahany, was convicted after jury trial of two counts of sodomy, Section 566.060 RSMo 1986, and one count of sexual abuse in the first degree, Section

566.100 RSMo 1986. Defendant was sentenced to consecutive sentences of five years for each sodomy count and forty-two days for the first degree sexual abuse. On appeal, defendant argues the trial court erred in (1) overruling defendant's motion to compel testimony of an endorsed defense witness; and (2) overruling defendant's objections to out-of-court statements of the complaining witness, age seven, to another person because such statements were not properly qualified under Section 491.075.1(1) RSMo 1986. We affirm.

Since defendant does not challenge the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, *see e.g., State v. Dinkins,* 741 S.W. 2d 40 (Mo.App.E.D.1987). The evidence adduced at trial showed that Frances Mahany, now Frances Moore, was married to defendant, Daniel M. Mahany, from July 24, 1976, to November 1, 1982. R.M., the son of defendant and Frances Moore, was born on December 15, 1978. Mrs. Moore received custody of R.M. pursuant to a divorce decree dissolving her marriage to defendant. By consent of the parties R.M. would ordinarily visit defendant every other weekend.

At trial, R.M. stated that on those weekends he was required to sleep in the same bed as his father. R.M. did not want to sleep there and did not like going to his father's house because he feared his father would molest him. R.M. confirmed previous statements to Officer Michael Williams of the St. Louis County Police Department and to Lae Titia La Rocke, a pediatric nurse practitioner at Cardinal Glennon Children's Hospital, that every time he went to his father's house, from approximately September 1984 to April 1985, his father would sodomize him. R.M. was not able to relate a specific number or the dates of occur-

rences of sodomy, but he did indicate that such occurred "a lot of times."

Dr. Anthony Scalzo, of the St. Louis University Medical Center, testified that pursuant to his April 25, 1985 examination of R.M. his findings were consistent with the conclusion that R.M. was a victim of chronic sexual abuse.

Defendant first contends that the trial court erred in overruling his Motion to Compel Testimony of endorsed defense witness, Brenda Bird. Defendant maintains Bird, a charged co-defendant, should have been ordered to testify because she was an essential witness to the defense and because defendant overcame the presumption that Bird's responses would incriminate her.

The record indicates that, prior to her taking the stand, Ms. Bird's attorney conveyed to defense counsel that Ms. Bird intended to exercise her Fifth Amendment right not to testify and right not to incriminate herself. Brenda Bird was sworn for a hearing apart from the jury in order to determine her intent for the record. She testified as to her current address, admitted she was charged with an offense in St. Louis County, and conceded she had taken a polygraph examination. However, as to all other questions relating to the criminal offense and facts pertaining to the present case, Ms. Bird responded by asserting the Fifth Amendment.

In support of the oral motion to compel testimony, defense counsel made an offer of proof to the effect that Brenda Bird would have testified in accord with her polygraph responses.[1] Defense counsel maintained that these answers not only would have aided defendant's claim of innocence but also could not have incriminated Brenda Bird. Moreover, counsel claimed that Ms. Bird's assertion of the Fifth Amendment was improper because she was

1. Defense counsel identified four specific questions which the polygraph examiner indicated Ms. Bird had answered truthfully:
    1. "Did you observe sexual activity of any kind between Dan and [R.M.]?" Answer: No.
    2. "Did you ever take photographs of any sexual activity between Dan and [R.M.]?" Answer: No.

3. "Did you ever engage in any sexual activity with Dan and [R.M.]?" Answer: No.
4. "Did you take any photographs of sexual activity involving Dan, [R.M.] and Tom?" Answer: No.

invoking it only to strengthen her chances of an entry of a Nolle Prosequi order and not out of a belief that her answers would be incriminating. Finally, defendant contends that Bird waived her privilege against self-incrimination because she answered questions relating to her address, her being charged with an offense, and her taking a polygraph examination without invoking the Fifth Amendment. The trial court overruled defendant's motion stating it was conceivable that Ms. Bird's answers on the polygraph were not true, and it was possible that the reaction of the machine was not accurate. If such were the case and she were compelled to testify, the trial court concluded she could be in a position to incriminate herself by answering some or all of the questions posed. We also observe that in-court testimony would not be limited to the polygraph questions.

The privilege against self-incrimination is secured by Article I, Section 19 of the Missouri Constitution and by the Fifth and Fourteenth Amendments to the United States Constitution. In order to assure that these protections are meaningful, our Supreme Court has held that once a witness claims the Fifth Amendment:

> "*A rebuttable presumption arises that the witness' answer might tend to incriminate him,* a presumption that can be rebutted by a demonstration by the party seeking the answer that such answer ' "cannot possibly" have such tendency to incriminate.' " (citations omitted).

*State ex rel. Shapiro Realty & Inv. v. Cloyd,* 615 S.W.2d 41, 46 (Mo. banc 1981).

■ Defendant attempts to rebut the presumption that Brenda Bird's answers would be incriminating by offering proof of her polygraph examination which the examiner concluded were truthful responses. For several reasons we do not believe defendant overcame the presumption that, if compelled to testify, Bird's answers could incriminate her. First, our courts have never accepted, as a matter of law, the reliability of polygraph examinations. *State v. Biddle,* 599 S.W.2d 182, 185 (Mo. banc 1980); *State v. Hensley,* 655 S.W.2d 810, 811 (Mo.App.1983). Our Supreme

Court has enunciated reasons, which include: these tests are not uniformly sanctioned by the scientific community; they contain a high degree of interpretive subjectivity; they are not susceptible to in-court examination and testing; and they are subject to an inordinately high degree of reliance by juries. *See, Biddle,* 599 S.W. 2d 187-190.

Second, "the polygraph will not detect the witness who makes honest misstatements of fact, and it may not detect the hardened individual who recognizes no responsibility [to tell the truth]." *Biddle,* 599 S.W.2d at 190 (citation omitted). Defendant's offer of proof assumes that Brenda Bird's answers to the polygraph examination were truthful. We note, however, that the state had evidence available linking Bird to the same offense for which defendant was convicted. This created more than an inference that the examinee's polygraph responses might not have been entirely truthful or exhaustive on the facts surrounding the case. In this respect, it is quite likely that questions could be raised at trial which were not asked by the polygraph operator, the answers to which could well incriminate Ms. Bird. Accordingly, the trial court did not err in refusing to find conclusive proof by defendant that the witness' answers "[could] not possibly have [a] tendency to incriminate [her]." *State ex rel. Anderson v. Hess,* 709 S.W.2d 526, 528[1, 2] (Mo.App.1986). (Citation omitted).

■ Defendant next asserts that Bird improperly invoked the Fifth Amendment out of a personal belief that her testimony would thwart prosecutorial promises to enter a Nolle Prosequi order on her behalf. In his offer of proof defense counsel refers to statements of the polygraph operator, Sam Yarbrough, who allegedly told Bird that if she passed the polygraph examination the prosecutor would likely nolle prosequi the charges pending against her. Defendant maintains the state had not dismissed the charges in order "to keep some sort of leash" on Bird and that she invoked the Fifth Amendment, not because her answers would tend to incriminate her, but because of her personal interest in having

the prosecutor enter an order of nolle prosequi.

This contention is without merit. First, a polygraph operator does not have the authority to promise a nolle prosequi of charges if the examinee's responses indicate truthfulness. A nolle prosequi is a formal entry made on the record by the prosecutor in which the prosecutor states he will no longer prosecute a pending criminal charge. *State v. Clark*, 711 S.W.2d 928, 934 [18–20] (Mo.App.1986). The prosecutor has the sole discretion whether or not to enter a nolle prosequi order without interference by the trial court in which the prosecution is pending. *Id.* Second, there is no support in the record that Bird was promised an order of nolle prosequi. In fact, the testimony of Mr. Belz, Brenda Bird's attorney, and statements by Al Johnson, the Assistant Prosecuting Attorney, are contrary. Both denied that the Prosecuting Attorney's Office had ever offered Ms. Bird any deals dependent upon the results of her polygraph examination, or incumbent upon the nature of any testimony she might give in proceedings collateral to the offense for which she was charged.

Appellant has not maintained by brief in this court a claim of error that Brenda Bird's answers to some questions served to waive her privilege to thereafter invoke the Fifth Amendment. Issues which are not presented in the points to be argued portion of the appellate brief are abandoned and will not be considered on appeal. *Jones v. Eagan*, 715 S.W.2d 596 (Mo.App. 1986); V.A.M.R. 84.04(d). Further, the questions which were answered related directly or indirectly to identification and none related to any issue on the events.

Defendant's first point is denied.

█ In his second point, defendant contends the trial court erred in overruling his objections to the out-of-court statements that R.M., a minor under the age of 12, made to Officer Williams because these statements were not properly qualified pursuant to Section 491.075.1(1) RSMo 1986.

The legislative purpose and effect of Section 491.075 RSMo 1986 was to create a statutory exception to the exclusion of evidence based on evidentiary objections by allowing statements of a child under the age of twelve "not otherwise admissible" relating to an offense under Chapter 565, 566 or 568, RSMo 1986 to be admitted in criminal proceedings as substantive evidence to prove the truth of the matter asserted. Section 491.075 is implicated only when timely objections to the admissibility of such statements are made on proper legal grounds. Once the issue of admissibility is raised by timely objection it is then incumbent upon the trial court to determine:

(1) … in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

  (a) testifies at the proceedings; or

  (b) is unavailable as a witness.

Section 491.075.1(1–2).

Here we note that defendant initially did not argue the applicability of Section 491.075.1 to the trial court. No objection to the presentation of evidence by Officer Williams was made until *after* the evidence had been offered and heard by the jury in its entirety. Only then was an objection made,[2] but such was not premised upon proper legal grounds.[3] An objection based upon violation of Section 491.075.1 was first raised in defendant's motion for new trial and preservation thereof is now attempted on appeal.

---

**2.** Defendant sought to strike the testimony of Officer Williams because a witness who was present during his interview of R.M., Mary Kelly, was not being called as a witness for the state. Defendant objected that he would be unable to question Kelly as to events surrounding the interview. However, this objection, was raised, was more of a request to compel the state to call Mary Kelly as a witness than a legal objection addressed to evidentiary rules.

**3.** Evidentiary grounds which would be proper to invoke Section 491.075.1 include, but are not limited to, hearsay, best evidence, qualification of a witness or lack of personal knowledge.

■ Defendant's claim of error fails for the following reasons. First, it was not preserved by timely objection. The failure to object to an argument or statement at the time it is made to the jury waives any right to complain about the argument or statement on appeal. *Glasscock v. Miller*, 720 S.W.2d 771, 777 [7] (Mo.App.1986). This is true even though the point is thereafter raised in a post-trial motion, because if an objection is not timely made, the trial court has no opportunity to take corrective action. *Id.* Second, Section 491.075 RSMo 1986 is inapplicable because there was no hearsay objection, no witness qualification objection, or other objection based on proper legal grounds. Nearly all evidence is admissible absent objection. See, *State v. Stidum*, 684 S.W.2d 448, 450 [1–3] (Mo. App.1984). On these facts, a preliminary hearing to determine whether the child's statement to the witnesses was supported by a sufficient indicia of reliability was not required. Defendant's second point is denied.

Judgment affirmed.

SMITH and KELLY, JJ., concur.