RIVER CITY DEVELOPMENT
ASSOCIATES, LLC,
Appellant,

v.

ACCURATE DISBURSING COMPANY,
LLC and Montgomery Bank, NA,
Defendants,

and

RCDA, LLC, Respondent.

No. ED 95222.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 5, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 22, 2011.

Gary A. Growe, Clayton, MO, for appellant.

David H. Luce, Clayton, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

River City Development Association, LLC (Plaintiff) appeals from the judgment of the Circuit Court of St. Louis County entered after a jury found in favor of RCDA, LLC (Defendant) on Plaintiff's claims for breach of contract and default on a promissory note. Plaintiff contends that the trial court erred in denying its motion for a new trial because: (1) with respect to the breach of contract claim, the judgment was "clearly against the weight of the evidence"; and (2) with respect to the default on a promissory note claim, "the uncontroverted evidence was that Defendant never tendered the proper amount of interest to satisfy its financial obligations under the note." We affirm.

### Background

This case concerns a real estate transaction between Plaintiff and Defendant for the sale of property situated in the City of St. Louis. Specifically, Plaintiff agreed to sell Defendant a commercial building known as the Fulton Bag Building, a bar known as Patty O's, and vacant lots adjacent to Patty O's (the Property). Defendant financed the purchase partially through a promissory note (the Promissory Note) for $1.2 million to be paid to Plaintiff.

On August 25, 2009, Plaintiff filed its third amended petition against Defendant alleging breach of contract and default on the Promissory Note. As to the breach of contract claim, Plaintiff alleged that the Defendant failed to pay the agreed upon $9.3 million purchase price for the Property because Defendant did not pay Plaintiff the approximately $1.12 million difference between $3.68 million allocated for renovation costs to the Fulton Bag Building and the $2.56 million in actual costs of the renovation. As to the default on the Promissory Note claim, Plaintiff alleged that Defendant failed to timely tender the proper principal and interest payments. In its answer, Defendant denied Plaintiff's allegations. Plaintiff did not file a motion for judgment on the pleadings or for summary judgment, and the case proceeded to a jury trial.

*Breach of Contract Claim*

With respect to the breach of contract claim, the only contested issue at trial was whether the parties agreed that the purchase price for the Property was $9.3 million and that Defendant was to pay Plaintiff the $1.12 million difference between $3.68 million allocated for renovation costs and the $2.56 million in actual costs. Evidence of Plaintiff's and Defendant's agreement included three documents signed by the parties: (1) the "Sale Contract"; (2) the "Construction Disbursing Escrow Agreement"; and (3) the "Construction Management Agreement."

Under the Sale Contract, Plaintiff agreed to sell Defendant the Property for a "total sale price" of $9.3 million. Of the $9.3 million, the Sale Contract allocated $3,682,087.92 ($3.68 million) "to be escrowed" for costs associated with the then-ongoing renovation of the Fulton Bag Building to add fifteen residential units.

Under the Construction Disbursing Escrow Agreement, the parties agreed to the terms governing the disbursement of funds from the $3.68 million to be escrowed and used for the renovation of the Fulton Bag Building. The Construction Disbursing Escrow Agreement provided that Defendant was to fund the escrow account with $3.68 million it received under its "Loan Agreement" with its lender, Montgomery Bank. The Construction Disbursing Escrow Agreement stated that "[a]nything to the contrary notwithstanding, [Montgomery Bank] shall not be required to make any disbursement of loan proceeds in contravention with the Loan Agreement ..." Additionally, the Construction Disbursing Escrow Agreement provided "[t]hat, in the event the actual cost of construction of the improvements to the Property ("Actual Cost") is less than [$3.68 million] ("Projected Cost"), [Defendant] shall pay to [Plaintiff] the difference between the Actual Cost and the Projected Cost ...." (parentheticals in the original).

Under the Construction Management Agreement, Plaintiff agreed to manage and supervise the renovation of the Fulton Bag Building. The Construction Management Agreement provided that Plaintiff was to contract with an escrowee and deposit the $3.68 million in an escrow account to be disbursed as agreed upon by Plaintiff and the escrowee. The Construction Management Agreement further stated that the $3.68 million "shall be used to pay all costs of construction, including but not limited to labor and materials in connection with the Project.... Upon full completion of the Project, if any amounts in the Escrow Funds remain, such funds shall be paid to [Plaintiff]."

In addition to the documents signed by the parties, Plaintiff and Defendant also called their respective representatives to testify as to the parties' agreement. Plaintiff's and Defendant's representatives disagreed as to whether $9.3 million was the agreed upon purchase price for the Property and whether Defendant was required to disburse the $1.12 million difference to Plaintiff. Plaintiff's managing member, Milton Rothschild, II, testified that he knew Plaintiff would not "net" $9.3 million and a second representative for Plaintiff, Paul Mortelli, testified that he did not know the sale price for the Property. A representative for Defendant, John Sabio, testified that $9.3 million was not the agreed price to purchase the Property and it was his understanding that the $3.68 million was to be used exclusively for the Fulton Bag Building renovations. Similarly, another representative for Defendant, Mr. Dorr, disagreed "[t]hat there was going to be a total of 9.3 million dollars going to sellers," and that it was his understanding that the entire $3.68 million was to be

used for the renovations to the Fulton Bag Building.

While the parties' representatives disagreed on the terms of the agreement, the witnesses did not dispute each party's respective performance under the agreement. The representatives agreed that neither party deposited $3.68 million in an escrow account. Instead, RCDA obtained a Construction and Bridge Loan from Montgomery Bank, from which the parties drew money to pay for the renovation costs. Between August 31, 2007 and the completion of the renovation in Spring 2008, River City and RCDA drew $2,566,273.22 ($2.56 million) in loan disbursements to pay the incurred renovation costs. River City requested RCDA to disburse to River City the $1,115,814.70 ($1.12 million) difference between $3.68 million and the $2.56 million incurred renovation costs. RCDA did not disburse the requested funds to River City.

Finally, Plaintiff called the loan officer from Montgomery Bank who authorized Defendant's Construction and Bridge Loan, Dan Wacker. Mr. Wacker testified that under the loan, Montgomery Bank would disburse money for renovation costs only if: (1) Plaintiff and Defendant approved the cost; (2) the cost was allocated pursuant to a Construction Budget prepared by Plaintiff and attached to the loan agreement; and (3) the disbursement was consistent with the loan agreement requiring that funds drawn directly benefit the renovation of the Fulton Bag Building, which served as collateral for the loan. Mr. Wacker further testified that neither the loan agreement nor the budget would have authorized the payment of $1.1 million, or any funds, to a third party, including Plaintiff.

At the close of the evidence, Plaintiff did not move for directed verdict, but submitted a verdict directing instruction for its breach of contract claim. Specifically, the instruction stated:

> Your verdict must be for Plaintiff River City and against Defendant RCDA if you believe:
>
> First, Plaintiff and Defendant entered into an agreement whereby Plaintiff agreed to sell to Defendant the Fulton Bag Building with 15 completed residential units, Paddy O's Restaurant and Bar and other lots as described in the Sale Contract, and Defendant agreed to pay $9,300,000.00 for these properties and
>
> Second, Plaintiff performed its agreement, and
>
> Third, Defendant failed to perform its agreement, and
>
> Fourth, Plaintiff was thereby damaged.

The jury returned a verdict in favor of Defendant, and the trial court subsequently entered its judgment consistent with the verdict. Thereafter, Plaintiff filed a motion for a new trial on the ground that "the jury verdict in the case was against the weight of all substantial, credible evidence." The trial court denied the motion.

### Default on the Promissory Note Claim

With respect to the default on the Promissory Note claim, the only contested issue at trial was the correct methodology for computing interest payments under the Promissory Note. The Promissory Note, which was admitted at trial, stated in pertinent part:

> For value received, the undersigned [Defendant] promises to pay to the order of [Plaintiff], the principal sum of One Million Two Hundred Thousand and No/100 Dollars ($1,200,000.00), with interest at the rate of six percent (6.0%) per annum until this Note is fully paid.

Principal and interest are payable as follows:

(1) Four Hundred Thousand and No/100 ($400,000.00) and all accrued and unpaid interest shall be due on the 30th day of August, 2008;

(2) Four Hundred Thousand and No/100 ($400,000.00) and all accrued and unpaid interest shall be due on the 30th day of August, 2009;

(3) Four Hundred Thousand and No/100 ($400,000.00) and all accrued and unpaid interest shall be due on the 30th day of August, 2010.

In the event default be made in the payment when due, the undersigned agree(s) to pay during the period of delinquency, interest on the unpaid balance of the indebtedness evidenced by this Note, at the rate of twelve percent (12%) per annum, but in no event shall such interest exceed the maximum rate permitted by law.

The parties presented conflicting evidence regarding the correct methodology for computing interest under the Promissory Note. Plaintiff contended that 6% interest accrued on the entire principal and presented evidence that Defendant had previously submitted a check to the clerk of the court consistent with Plaintiff's methodology for computing interest. Conversely, Defendant contended that 6% interest accrued only on each individual installment when paid, and presented evidence that Plaintiff had previously sent Defendant a demand letter indicating a balance consistent with Defendant's methodology for computing interest. Uncontradicted evidence at trial showed that Defendant had made several payments to Plaintiff, and using Plaintiff's methodology for computing interest, Defendant owed $527,059.76, and using Defendant's methodology for computing interest, Defendant had tendered all amounts due under the Promissory Note.

At the close of the evidence, Plaintiff did not move for directed verdict, but submitted a verdict directing instruction, stating:

Your verdict must be for Plaintiff River City and against Defendant RCDA if you believe:

First, Defendant RCDA failed to timely pay the amount of principal and interest due on the Promissory Note, and

Second, Plaintiff was thereby damaged,

Unless you believe Plaintiff is not entitled to recovery by reason of Instruction Number 11.

Instruction Number 11 stated: "Your verdict must be for Defendant RCDA if you believe that Defendant has paid or tendered payment due under the Promissory Note." The jury returned a verdict in favor of Defendant, and the trial court subsequently entered its judgment consistent with the verdict. Thereafter, Plaintiff filed a motion for a new trial on the ground that "the jury verdict in the case was against the weight of all substantial, credible evidence." The trial court denied the motion.

This appeal followed.

### Standard of Review

In reviewing a denial of a motion for a new trial, we are mindful that "[c]ourts should not overturn a jury verdict lightly. Trials are costly—for the litigants, the jurors and taxpayers." *Keltner v. K–Mart Corp.*, 42 S.W.3d 716, 722 (Mo.App. E.D. 2001). We review the denial of a motion for a new trial for an abuse of discretion. *Burrows v. Union Pac. R. Co.*, 218 S.W.3d 527, 533 (Mo.App. E.D.2007). "A trial court abuses its discretion when its ruling shocks the sense of justice, shows a lack of consideration, and is obviously against the logic of the circumstances." *Id.* at 533–34.

### Discussion

■ In its first Point Relied On, Plaintiff contends that the trial court erred in denying its motion for a new trial because the judgment in favor of Defendant on its breach of contract claim was "clearly against the weight of the evidence."[1] In the argument section of its brief, Plaintiff argues that the evidence was "uncontroverted" and that "there is not one scintilla of evidence to support the Judgment for the Defendant." Plaintiff further alleges that the parties' signed documents were "clear and unambiguous with respect to [Defendant's] contractual obligation to pay to [Plaintiff] the difference between $3.68 million and the cost to complete the renovation," and the trial court abused its discretion by failing in its "duty" to uphold the contracts as written. In response, Defendant asserts that the trial court's denial of Plaintiff's motion for a new trial on the grounds that the jury's verdict is against the weight of the evidence is a "conclusive determination" that cannot be overturned on appeal. Defendant also argues that, in any event, the record contains sufficient evidence to support the jury's verdict that Defendant did not agree to pay $9.3 million for the Property.

■ As an initial matter, we note that in its Point Relied On, Plaintiff asserts that the judgment is "against the weight of the evidence," yet in the argument section of its brief, Plaintiff argues that the judgment for Defendant is "void of any evidence." In short, Plaintiff appears to conflate two separate bases of appellate review. An "against-the-weight-of-the-evidence challenge presupposes the threshold issue of the existence of substantial evidence supporting a proposition necessary to sustain a judgment but, nevertheless, challenges the probative value of that evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact." *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App. S.D.2010). By contrast, a "not-supported-by-substantial-evidence challenge" is an assertion that the record lacks evidence "which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *Id.* (quoting *Williams v. Daus*, 114 S.W.3d 351, 359 (Mo.App. S.D.2003)) (internal alterations omitted). Here, Plaintiff's challenge does not presuppose that there is substantial evidence in support of the judgment in favor of Defendant, but rather argues that there is no evidence in support of the judgment. Because Plaintiff adequately addresses its not-supported-by-substantial-evidence challenge in the argument section of its brief, we consider it.

■ Plaintiff's contention that the jury's verdict in favor of Defendant is not supported by substantial evidence is without merit. Plaintiff bore the burden of proving its breach of contract case. Because Plaintiff bore the burden of proof, "a verdict in [D]efendant's favor need not be supported by any evidence." *Warren v.*

1. Plaintiff's first Point Relied On states:
   THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR NEW TRIAL ON VERDICT A (BREACH OF CONTRACT) BECAUSE THE SALES CONTRACT, CONSTRUCTION MANAGEMENT AGREEMENT AND DISBURSING AGREEMENT WERE CLEAR AND UNAMBIGUOUS WITH RESPECT TO DEFENDANT'S CONTRACTUAL OBLIGATION TO PAY TO PLAINTIFF THE DIFFERENCE BETWEEN $3.62 MILLION AND THE COST TO COMPLETE RENOVATION, AND IN THE ABSENCE OF ANY SUBMITTED AFFIRMATIVE DEFENSE OR COUNTERCLAIM, THE VERDICT AND JUDGMENT WERE ***CLEARLY AGAINST THE WEIGHT OF THE EVIDENCE*** (emphasis added).

*Thompson,* 862 S.W.2d 513, 514 (Mo.App. W.D.1993) (citing *Bakelite Co. v. Miller,* 372 S.W.2d 867, 871–72 (Mo.1963)). Where a party bears the burden of proof, it is within the jury's prerogative to find against that party, even if that party's evidence is uncontradicted and unimpeached. *Ratcliff v. Sprint Mo., Inc.,* 261 S.W.3d 534, 542 (Mo.App. W.D.2008). It is well-settled that "the sufficiency of the evidence to support a defendant's verdict is not a question amenable to appellate review." *Warren,* 862 S.W.2d at 514.[2]

■ Additionally, Plaintiff, in arguing that the parties' signed documents were clear and unambiguous and that the trial court failed to uphold the contract as written, contends, in essence, that it was entitled to a judgment as a matter of law that Defendant was in breach of contract. Such a claim "is tantamount to saying that [Plaintiff] was entitled to a directed verdict."[3] *Glasscock v. Miller,* 720 S.W.2d 771, 773 (Mo.App. S.D.1986). Plaintiff, however, did not move the trial court for a directed verdict, but rather submitted the case to the jury. As a general rule, an appellate court will not convict a trial court of error on an issue which was not before it. *Id.* (citing *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36 (Mo. banc 1982)). A corollary rule is that a plaintiff who failed to move the trial court for a directed verdict is precluded from asserting on appeal that it is entitled to a verdict as a matter of law. *Id.* (citing *Parsons Constr. Co. v. Mo. Pub. Serv. Co.,* 425 S.W.2d 166, 171 (Mo.1968); *Stanziale v. Musick,* 370 S.W.2d 261, 266 (Mo.1963)); *see also Crystal Tire Co. v. Home Serv. Oil Co.,* 525 S.W.2d 317, 320–21 (Mo. banc 1975) (holding that because the defendant "at no time moved the court for a directed verdict in its favor on its cross-claim ..., but joined in submitting its case to the jury, ... [the defendant's] point that it was entitled to judgment as a matter of law on its cross-claim was not preserved for appellate review.").[4] To the extent Plaintiff contends that it was entitled to a judgment as a matter of law, its argument is not preserved for appeal. Point denied.

■ In its second point, Plaintiff contends that the trial court abused its discretion in denying Plaintiff's motion for a new trial on the Promissory Note claim "because the uncontroverted evidence was that [Defendant] never tendered the proper amount of interest to satisfy its financial obligations under the note." Plaintiff further asserts that under the plain language of the Promissory Note, 6% interest accrued on the entire balance and 12% interest on unpaid balances, and the trial court "abused its discretion in failing to apply the plain language of the Promissory Note to the facts." In response, Defendant asserts that the trial court did not abuse its

---

2. We note that even if Plaintiff had argued that the judgment was against the weight of the evidence, we would remain unpersuaded because an appellate court will not rule on the weight of the evidence in a jury-tried case. *See Woods v. Friendly Ford, Inc.,* 248 S.W.3d 699, 704 (Mo.App. S.D.2008). (holding that a "trial court's denial of a motion for new trial challenging the verdict as against the weight of the evidence is a conclusive determination that cannot be overturned on appeal.").

3. At oral argument, counsel for Plaintiff conceded as much when in response to the pan-

el's question, "Are you telling us that the court should have directed a verdict for you?" counsel answered, "Yes. That's why I'm here."

4. Notably, in addition to failing to move for a directed verdict, Plaintiff also chose not to have the trial court construe the parties' signed documents or determine Defendant's breach of contract as a matter of law in either a motion for summary judgment or a judgment on the pleadings.

discretion in denying Plaintiff's motion because "there was substantial probative evidence to support the jury's verdict that Defendant paid the proper amount of interest under the note."

The flaws in Plaintiff's second point mirror those in its first point. Plaintiff's argument that it was entitled to a new trial because its evidence was uncontroverted is without merit because Plaintiff bore the burden of proving its claim and the jury was free to believe or disbelieve Plaintiff's evidence. *See Bakelite Co.*, 372 S.W.2d at 871.[5]

■ Additionally, Plaintiff, in arguing that under the plain language of the Promissory Note, interest accrued at 6% on the entire balance and 12% on any unpaid balances, and that the trial court failed to apply the plain language of the Promissory Note, asserts, in essence, that it was entitled to a judgment as a matter of law that Defendant was in default on the Promissory Note. As stated above, because Plaintiff did not move the trial court for a directed verdict and submitted its case to the jury, Plaintiff's claim that it was entitled to a judgment as a matter of law is unpreserved. *See Glasscock*, 720 S.W.2d at 773. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

MARY K. HOFF, P.J., and GLENN A. NORTON, J., concur.

---

5. To the extent the jury may have reached its verdict based on Defendant's affirmative defense in Instruction 11 (as to which Defendant bore the burden of proof) requiring the jury to believe that Defendant "has paid or tendered payment due under the Promissory Note," the judgment is supported by substantial evidence. Specifically, Ms. Sheffold testified that under RCDA's methodology for computing interest, RCDA had tendered the full payment under the Promissory Note.